

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: March 30, 2022.**

_____
**CRAIG A. GARGOTTA**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | **CASE NO. 20-50369-cag** |
| | § | |
| **DALF ENERGY, LLC,** | § | |
| | § | **CHAPTER 11** |
| Debtor. | § | |

| | | |
|---|---|---|
| **TITANURBI21, LLC et al.,** | § | |
| Plaintiffs. | § | |
| | § | **ADVERSARY NO. 20-05054-cag** |
| **v.** | § | |
| | § | |
| **GS OILFIELD SERVICES, LLC et al.,** | § | |
| Defendants. | § | |

### MEMORANDUM OPINION ON HY TECH DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 68) AND GRANTING IN PART, DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AGAINST HY TECH, INC. AND VIKI TEINERT (ECF NO. 71)

Came on for consideration the above-numbered adversary proceeding and, in particular,

1

two summary judgment motions and responsive pleadings. The first set is HY Tech Defendants'

Motion for Summary Judgment (ECF No. 68)[1] ("HY Tech MSJ"), Plaintiffs' Response to HY

Tech Defendants' Motion for Summary Judgment and their Brief in Support of Same (ECF No.

108), and Reply of HY Tech Inc. and Defendant Viki Teinert to Plaintiffs' Response to

Defendants' Motion for Summary Judgment (ECF No. 110). The second set is Plaintiffs' Motion

for Summary Judgment Against HY Tech, Inc. and Viki Teinert (ECF No. 71) ("Plaintiffs' MSJ"),

Response of Defendant HY Tech, Inc. and Viki Teinert to Plaintiffs' Motion for Partial Summary

Judgment (ECF No. 100), and Plaintiffs' Reply Brief in Support of their Motions for Summary

Judgment Against the HY Tech Defendants (ECF No. 114). After a hearing on August 25, 2021,

the Court took the HY Tech MSJ and Plaintiffs' MSJ under advisement.[2]

  For the reasons stated herein, the Court finds that the HY Tech MSJ should be GRANTED

IN PART and DENIED IN PART. The Court further finds that Plaintiffs' MSJ should be

GRANTED IN PART and DENIED IN PART.

### JURISDICTION

  As an initial matter, the Court finds it has jurisdiction over this matter under 28 U.S.C.

§§ 1334 (a) and (b).  Venue is proper under 28 U.S.C. §§ 1408 and 1409. The bankruptcy court

has authority to adjudicate this matter pursuant to the District Court's Standing Order of Reference.

Plaintiffs have consented to this Court's authority to enter a final order. (Case No. 20-05049, ECF

No. 19). Defendants also consented. (Case No. 20-05049, ECF No. 36).

---

[1] "ECF" denotes the electronic filing number. By way of background, the operative Complaint at issue was filed in Adversary No. 20-05049-cag, ***DALF Energy, LLC and TitanUrbi21, LLC v. GS Oilfield Services, LLC et al***. The Court consolidated Adversary No. 20-05049 with this Adversary No.20-05054 on January 12, 2021. (ECF No. 32 in Adversary No. 20-05054). Unless otherwise noted, all ECF references are to Adversary No. 20-05054.

[2] At the hearing on August 25, 2021, the parties made oral argument on additional dispositive motions that are not addressed in this opinion. This opinion addresses only the Court's ruling on the HY Tech MSJ (ECF No. 68) and Plaintiffs' MSJ (ECF No. 71).

### BACKGROUND

TitanUrbi21, LLC ("TU") is a self-described "investment company" that holds oil and gas interests. (ECF No. 68, Ex. B, ¶¶ 35, 38). TU also owns two entities—DALF and Titan Vac & Flow, LLC ("Titan"). DALF was the sole operator of TU's oil and gas leases. (*Id*.). Titan provided vacuum truck and managerial services for DALF's operations. (*Id*.).

DALF sought to invest in oil and gas leases in Texas. (*Id*. at ¶ 36). In or around October 2015, DALF's owner Alberto Garza ("Garza") was introduced to Jeffrey R. Scribner ("Scribner"). (*Id*.). According to Plaintiffs' Complaint, Scribner represented himself as a petroleum engineer who was "the 'best' in evaluating oil and gas properties due to his prior work at Marathon Oil Company and other energy companies." (*Id*.). Plaintiffs contend Scribner represented that he obtained Bachelor of Science degrees in Petroleum Engineering, Chemistry, and Physics from Texas Tech University, where he allegedly graduated "best in his class." (*Id*.). DALF retained Scribner as "an independent contractor and its agent" "to locate and analyze potential oil and gas investment opportunities and to operate and maintain the oil and gas wells." (*Id*. at ¶ 37). After being retained by DALF in 2016, Scribner entered into a number of transactions to purchase oil and gas interests on behalf of TU.

The transaction at issue ("HY Tech Transaction") in this set of summary judgment motions[3] is the sale of Texas oil and gas leases to TU from HY Tech, Inc. ("HY Tech"). In the 1970s, Viki Teinert's father, CS Youngblood acquired oil and gas interests in the Texas Panhandle. (ECF No. 68, Ex. C, ¶ 3). Mr. Youngblood operated the oil and gas interests personally for more than twenty years. (*Id*.). In 1984, Mr. Youngblood formed HY Tech, Youngblood Charles-Viki-Christi LP ("YCVC"), and Youngblood Resources, Inc. (collectively, the "Youngblood Entities").

---

[3] Other parties and Plaintiffs filed various other motions for summary judgment at ECF Nos. 64, 66, 67, 69, 70, 72, 73, 74, 75, 76, 77, 78, 79). The Court will address those motions in separate orders.

Mr. Youngblood created YCVC to hold the oil and gas interests, and he formed HY Tech to serve as the operator of the oil and gas interests. (*Id*.). When Mr. Youngblood passed away in 2000, he bequeathed the ownership interests in the Youngblood Entities to his wife, Pat Youngblood. (ECF No. 68, Ex. C, ¶ 4). In 2011, Pat Youngblood passed away and left the ownership interests in the Youngblood Entities to her children Viki Teinert, Charles Youngblood, and Christi Youngblood. (*Id*.).

None of the Youngblood children (individually or through the Youngblood Entities) purchased or sold any oil and gas interests until 2011, when YCVC conveyed oil and gas interests it held to HY Tech (the "YCVC Conveyance"). (ECF No. 68, Ex. C, ¶ 4–5). The YCVC Conveyance included a reservation of overriding royalty interest in varying percentages in each well to YCVC. (ECF No. 68, Ex. C, ¶ 6).

On February 6, 2017, Scribner contacted Teinert for the first time to ask if the Youngblood Entities had oil and gas leases for sale. (ECF No. 68, Ex. C, ¶ 7). Teinert maintains neither she nor any other representatives of the Youngblood Entities had ever heard of or met Scribner until Scribner called her on February 6, 2017. (*Id*.). Teinert also contends the Youngblood Entities never advertised or publicly solicited that their oil and gas interests were available for sale. (*Id*.; ECF No. 71, Ex. A, 12:21–24). HY Tech had engaged in one prior transaction in December 2016: sale of its Schubert Lease to Mewbourne Oil and Gas. (ECF No. 71, Ex. A, 9:14–10:1).

In their initial communications on February 6, 2017, Scribner told Teinert that he was a petroleum engineer with a degree from Texas Tech. (ECF No. 71, Ex. A, 10:22–11:10). Scribner also stated he "was with" DALF, a "sophisticated oil and gas company based in San Antonio that owned oil and gas interests elsewhere in Texas and that DALF was looking to expand into the Texas Panhandle." (ECF No. 68, Ex. C, ¶ 7). Teinert reviewed Scribner's LinkedIn profile, which

4

stated he held a petroleum engineering degree, had previously worked for large oil companies, and was currently working for DALF. (*Id*.). After reviewing Scribner's LinkedIn profile, she "was convinced that Scribner was an oil and gas 'landman' with significant experience in the oil and gas industry." (*Id*.).

On February 6, 2017, Teinert emailed Scribner letter provided an asking price of $459,296.57 for HY Tech's leases and wells. (ECF No. 68, Ex. C-2). The letter also included a production package with a spreadsheet reflecting what the Youngblood Entities considered to be the value of their oil and gas interests. (*Id*.). On February 9, 2017, YCVC assigned its well interests to HY Tech but reserved an override royalty interest for YCVC. (ECF No. 68, Ex. C-13). In email dated February 9, 2017, Teinert informed Scriber that YCVC reserved an override interest, and Teinert included an adjusted spreadsheet for the new values of the wells with the override. (ECF No. 68, Ex. C-3).

On February 16, 2017, Scribner called Teinert and made an offer on HY Tech's oil and gas interests (the "HY Tech Interests") for $450,000, with the newly added caveat that a 10% override royalty interest would be reserved for Oil & Gas Holdings LLC. (ECF No. 68, Ex. C, ¶ 10). Scribner accepted the offer on behalf of DALF and TU. (*See id*.). Scribner sent Teinert an email on February 16, 2017 with a confirmation of the percentage splits, disclosing that DALF will be the operator, and confirming that Oil & Gas Holdings, LLC would receive an overriding royalty interest. (ECF No. 68, Ex. C-6). Scribner signed that email as the "CEO/Managing Member" of DALF. (*Id*. at 2). On February 17, 2017, Scribner sent Teinert an email containing an example of the form of the assignment for Teinert to use when drafting the assignment from the Youngblood Entities to TU. (ECF No. 68, Ex. C-7). The example was the assignment used in the transfer of the Novella Lease from Scribner, individually to TU in October 2016 ("Novella Assignment"). (*Id*. at

3). The Novella Assignment included an override reservation to Oil & Gas Holdings, LLC. (*Id*. at 4).

After agreeing to sell the HY Tech Interests, Teinert researched the entities she believed were involved in the transaction, including DALF, TU, and Oil & Gas Holdings LLC. (ECF No. 68, Ex. C, ¶ 12; ECF No. 71, Ex. A, p. 17:16–21:3). Her research informed her that TU was formed in 2014; was located in San Antonio, Texas; and was in good standing.[4] (ECF No. 68, Ex. C-8; ECF No. 68, Ex. C, ¶ 12). Consequently, Teinert "believed that Titan was engaged in the business of exploring for or producing oil, gas, or other minerals as an ongoing business." (ECF No. 68, Ex. C, ¶ 12). Teinert also reviewed information for DALF on the Texas Railroad Commission ("TRC") website, which confirmed DALF was an active well operator for oil and gas wells since 2013.[5] (ECF No. 68, Ex. C-9; ECF No. 68, Ex. C, ¶ 13). After reviewing the TRC website, Teinert "believed that DALF was engaged in the business of exploring for or producing oil, gas, or other minerals as an ongoing business or at least was [an] oil and gas drilling company, well service company, or a production company." (ECF No. 68, Ex. C, ¶ 13). Teinert also testified that she understood Plaintiffs' corporate structure— "Titanurbi . . . was the primary owner and that DALF was their operating company. They are affiliates." (ECF No. 71, Ex. A, 20:8–22). Finally, Teinert researched Oil & Gas Holdings, LLC with the Texas Secretary of State, finding that Scribner was the manager of that entity.[6] (ECF No. 68, Ex. C, ¶ 14).

The HY Tech Transaction closed on February 21, 2017 at the HY Tech office in Pampa, Texas. (ECF No. 68, Ex. C-1). The Purchase and Sale Agreement provided for the sale of the

---

[4] HY Tech MSJ includes a search document with timestamps, corroborating Viki's statement that she conducted this research on February 17, 2017 at 4:02–4:03 PM. (ECF No. 68, Ex. C-8).

[5] HY Tech MSJ includes a search document with a timestamp, corroborating Teinert's statement that she conducted this research on February 17, 2017 at 4:09 PM. (ECF No. 68, Ex. C-9).

[6] HY Tech MSJ attaches a Certificate of Formation Limited Liability Company, which is not timestamped. (ECF No. 68, Ex. C-10).

Youngblood Parties' working interests in oil and gas leases, along with personal property. (*Id.*) As reflected in the assignment, TU paid $405,000 for the interests in oil and gas leases held by HY Tech and paid $45,000 to purchase equipment from TY Com, Inc. (*Id.*). Scribner testified that Carlos Sr, TU's owner and then-managing member, "wouldn't sign anything until [Scribner] made everything completely clear to him and his lawyers had checked it out." (ECF No. 68, Ex. D, 69:12–14).

On July 5, 2017, TU, DALF, and Titan filed a lawsuit against Scribner and Hector Fino in the 23rd Judicial District Court of Gray County, Texas ("State Court Lawsuit"). On December 22, 2017, Plaintiffs amended the petition in their State Court Lawsuit to add causes of action against a number of additional defendants from whom TU purchased oil and gas interests. The State Court Lawsuit includes a claim against the HY Tech Defendants for recission of the HY Tech Transaction for violation of the Texas Securities Act based upon the sale of unregistered securities. TU filed motions for summary judgment in the State Court Lawsuit—including a motion for summary judgment against the HY Tech Defendants—seeking a determination on the issue of liability under the Texas Securities Act. Thereafter, the State Court Lawsuit was removed to this Court after DALF filed its chapter 11 petition.

Plaintiffs' Complaint in this Adversary Proceeding requests entry of a declaratory judgment against Defendants for violation of the Texas Securities Act. (ECF No. 68, Ex. A). Plaintiffs seek rescission of the purchase and sale agreements for the HY Tech Transaction, along other purchases of oil and gas leases made by TU. (*Id.*). Finally, Plaintiffs seek a determination that Defendants—and not DALF—have the plugging and abandonment liability with respect to the subject leases, including the leases in the HY Tech Transaction, under Section 89.011 of the Texas Natural Resources Code. (*Id.*). Plaintiffs contend that a declaratory judgment from this

7

Court concerning plugging and abandonment obligations that DALF might have under Section 89.011 of the Texas Natural Resources Code will be critical to the administration of DALF's bankruptcy estate. (*Id*.).

**A**LLEGATIONS

At issue in both Plaintiffs' MSJ and the HY Tech MSJ is whether the HY Tech Transaction is an exempt transaction under the Texas Securities Act ("TSA"). Both parties acknowledge the securities sold from the HY Tech Defendants to TU were not registered under the Texas Securities Act. (ECF No. 71, Ex. 4). Also, both parties admit that Teinert was not licensed under the Texas Securities Act. (*Id*.).

HY Tech Defendants contend their assignments of oil and gas interests are exempt under Tex. Rev. Civ. Stat. Ann. art. 581-5 §§ C, I, Q, and section 109.14(d) of the Texas Administrative Code. Defendants also seek a summary judgment finding that DALF is not entitled to rescission of Defendants' contracts with TU for sale of oil and gas interests, because DALF was not a party to those contracts. Finally, Defendants request a summary judgment finding that, as a matter of law, Defendants did not make misrepresentations, nor did they commit fraud. Conversely, TU argues that Defendants do not qualify for exemptions under Art. 581-5 §§ C, I, and Q or section 109.14(d) of the Texas Administrative Code. TU also seeks a declaratory judgment finding: (1) HY Tech Defendants sold TU interests in oil and gas leases in violation of the TSA; and (2) TU is entitled to summary judgment for rescission of the assignment.

**S**UMMARY **J**UDGMENT **S**TANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

8

of law." Fed. R. Civ. P. 56(c); ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322 (1986).  Bankruptcy

Rule 7056 applies Rule 56(c) of the Federal Rules of Civil Procedure to adversary proceedings.  If

summary judgment is appropriate, the Court may resolve the case as a matter of law.  ***Celotex***

***Corp.***, 477 U.S. at 323; ***Blackwell v. Barton***, 34 F.3d 298, 301 (5th Cir. 1994).  The Fifth Circuit

has stated "[t]he standard of review is not merely whether there is a sufficient factual dispute to

permit the case to go forward, but whether a rational trier of fact could find for the non-moving

party based upon evidence before the court."  ***James v. Sadler***, 909 F.2d 834, 837 (5th Cir. 1990)

(citing ***Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.***, 475 U.S. 574, 586 (1986)).

To the extent that the non-moving party asserts the existence of factual disputes, the

evidence offered by the non-moving party to support those factual contentions must be of sufficient

quality so that a rational fact finder might, at trial, find in favor of the non-moving party.

***Matsushita***, 475 U.S. at 585–87 (1986) (non-moving party "must do more than simply show that

there is some metaphysical doubt as to material facts."); ***Anderson v. Liberty Lobby, Inc.***, 477

U.S. 242, 249–50 (1986) ("adverse party's response . . . must set forth specific facts showing that

there is a genuine issue for trial.").  If the record "taken as a whole, could not lead a rational trier

of fact to find for the non-moving party, then there is no genuine issue for trial." ***LeMaire v.***

***Louisiana***, 480 F.3d 383, 390 (5th Cir. 2007).

In determining whether a genuine issue of material fact exists, the nonmoving party must

respond to a proper motion for summary judgment with specific facts demonstrating that such

genuine issue exists.  "[A] genuine issue of material fact is not raised by mere conclusory

allegations or bald assertions unsupported by specific facts."  ***Leon Chocron Publicidad Y***

***Editoria, S.A. v. Jimmy Swaggart Ministries***, 990 F.2d 1253 (5th Cir. 1993) (citation omitted).

## TEXAS SECURITIES ACT

As a general rule, any security sold in the State of Texas must be registered. Tex. Rev. Civ. Stat. Ann. art. 581-7(A)(1) (West 2021). An interest in an oil and gas lease is defined as a security by the Texas Securities Act ("TSA"). *See Anderson v. Vinson Expl., Inc.*, 832 S.W.2d 657, 662 (Tex. App. –El Paso 1992, writ denied) ("An assignment of an interest in an oil and gas lease is a 'security' as defined in Article 581-4 A of the Texas Securities Act."); *see also* Tex. Rev. Civ. Ann. art. 581-4(A) (West 2021) (defining of "security" or "securities" to include "any instrument representing any interest in or under an oil, gas or mining lease, fee or title"). Individuals who sell unregistered securities may be civilly liable to the security's buyer. *See generally* Tex. Rev. Civ. Stat. Ann. Art. 581-33(A) (West 2021) (allowing recission or damages as a remedy for sale or issuance of an unregistered security in violation of the TSA). Sellers can escape liability, however, if either the transaction or the security is exempt under certain provisions of the TSA. Tex. Rev. Civ. Ann. arts. 581-5, 581-6.

The Court makes two preliminary observations about the TSA: one historical, and one contemporary. First, the Court notes that the TSA originally became effective on September 6, 1955. *Vernon's Texas Civil Statutes*, art. 579-1–579-42 (West Supplement 1956). The TSA's registration requirement expressly applies to the sale or offering for sale of "any securities issued after September 6, 1955." Tex. Rev. Civ. Stat. Ann. art. 581-7(A)(1). The parties neither made arguments nor presented evidence about when any of the securities involved in this case were issued. Plaintiffs argued the assignments of interests from each defendant group to the Plaintiffs were signed on a date in this millennium, "thus making it a security issued after September 6, 1955, for purposes of the TSA's application to the transaction." *See, e.g.,* ECF No. 69, at 15–16 (arguing that the Anderson Defendants transaction signed on July 5, 2016, so it is a security issued

10

after September 6, 1955). This argument conflates the sale of a security with its issuance. To determine whether the TSA applies to each security in question, the Court must receive evidence and argument regarding when the securities were issued.

The second observation is the Court is aware that the TSA has been codified pursuant to Section 323.007 of the Government Code. Texas State Securities Board, *Codification of the Texas Securities Act (2022): The Statutory Codification Process*, TEXAS STATE SECURITIES BOARD, https://www.ssb.texas.gov/texas-securities-act-and-board-rules/codification-texas-securities-act-2022. As a result, the Texas Securities Act is now located in the Government Code. *See* Tex. Gov't Code Ann. §§ 4001.001 et seq. Codification of the TSA pursuant to House Bill 4171 was intended to be non-substantive, merely moving the TSA from Vernon's Texas Civil Statutes to the Texas Government Code. Texas State Securities Board, *supra.* The codification became effective on January 1, 2022.

The TSA as now codified is not applicable to this case. "A statute is presumed to be prospective in its operation unless expressly made retrospective." Tex. Gov't Code Ann. § 311.022 (West 2021); *see also* Text. Const. art. 1 § 16 ("No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made."). "Statutes are only applied retroactively if the statutory language indicates that the Legislature intended that the statute be retroactive." ***In re M.C.C.***, 187 S.W.3d 383, 384 (Tex. 2006) (citations omitted). Nothing in the non-substantive codification expressly indicates that the Legislature intended the new iteration of the TSA to apply retroactively. Moreover, the Government Code contains saving provisions clarifying that "reenactment, revision, amendment, or repeal of a statute does not affect . . . . the prior operation of the statute or any prior action taken under it." Tex. Gov't Code Ann. § 311.031 (West 2021). Therefore, the Court will apply the TSA as in effect at the time of the transactions.

11

<u>**ANALYSIS**</u>

**I.     Eligibility of HY Tech Defendants to be Exempt From Registration Requirements of the TSA**

In this case, both parties acknowledge HY Tech Defendants sold TU oil and gas securities that were not registered. Section 7 of the TSA provides, "a person who offers or sells a security in violation of Section 7 . . . of this Act is liable to the person buying the security from him, who may sue either at law or in equity for recission or for damages if the buyer no longer owns this security." Tex. Rev. Civ. Stat. Ann. art. 581-33(A). Section 7 of the TSA further provides:

> No dealer or agent shall sell or offer for sale any securities issued after September 6, 1955, except those which shall have been registered by Notification under subsection B or by Coordination under subsection C of this Section 7 and except those which come within the classes enumerated in Section 5 or Section 6 of this Act, until the issuer of such securities or a dealer registered under the provisions of this Act shall have been granted a permit by the Commissioner . . . .

Tex. Rev. Civ. Stat. Ann. art. 581-7(A). Stated differently, Section 7 of the TSA provides, in relevant part, that a "dealer" or "agent" cannot sell a security without being granted a permit, unless the security is registered, or the security qualifies under one of the enumerated exemptions provided in Art. 581-5 of the TSA. *Id.*

Specific exemptions are described in Section 5 of the TSA. Tex. Rev. Civ. Stat. Ann. art. 581-5(A)-(U). The party claiming the exemption under Section 5 of the TSA has the burden of proof in establishing the exemption. *See* Tex. Rev. Civ. Stat. Ann. art. 581-37 ("It shall not be necessary to negative any of the exemptions in this Act in any complaint, information or indictment, or any writ or proceeding laid or brought under this Act; and the burden of proof of any such exemption shall be upon the party claiming the same"). If a sale of a security occurred in an exempt transaction, then the provisions of the TSA that require registration with the Texas State Securities Board do not apply to the sale of the security.

Plaintiffs allege the HY Tech Defendants' sale of their oil and gas leases to TU constituted the sale of an unregistered security, and that HY Tech Defendants are ineligible for an exemption from the TSA. The HY Tech MSJ contends the HY Tech Transaction is exempt from the TSA under Tex. Rev. Civ. Stat. Ann. art. 581-5 §§ C(1), I, and Q and section 109.14(d) of the Texas Administrative Code.[7] The Court will address the applicability of each exemption to the HY Tech Transaction in turn.

### A. Exemption for Isolated Transactions Under Art. 581-5 § (C)(1)

Art. 581-5(C)(1) provides that the following transaction is exempt from the Texas Securities Act:

> Sales of securities made by or in behalf of a vendor, whether by dealer or other agent, in the ordinary course of bona fide personal investment of the personal holdings of such vendor, or change in such investment, if such vendor is not engaged in the business of selling securities and the sale or sales are isolated transactions not made in the course of repeated and successive transactions of a like character; provided, that in no event shall such sales or offerings be exempt from the provisions of this Act when made or intended by the vendor or his agent, for the benefit, either directly or indirectly, of any company or corporation except the individual vendor (other than a usual commission to said agent), and provided further, that any person acting as agent for said vendor shall be registered pursuant to this Act [.]

Tex. Rev. Civ. Stat. Ann. art. 581-5(C)(1) (referred to hereinafter as "TSA 5(C)(1)"). The TSA does not define the term "vendor." The parties' arguments did not include case law interpreting TSA 5(C)(1). Likewise, the Court did not find case law to inform it on what constitutes a sale "in the ordinary course of bona fide personal investment"; when a vendor is "not engaged in the business of selling securities"; or how to determine if "sales are isolated transactions not made in the course of repeated and successive transactions of a like character." Tex. Rev. Civ. Stat. Ann.

---

[7] Tex. Rev. Civ. Stat. Ann. art. 581-5 §T ("Section 5.T") provides an exemption for "[s]uch other transactions or conditions as the board by rule, regulation, or order may define or prescribe, conditionally or unconditionally." Section 5.T allows movants to assert exemptions that are provided for by rules, regulations, or orders outside of the TSA, including the Texas Administrative Code.

art. 581-5(C)(1).

The HY Tech Defendants contend their sale of oil and gas securities to TU was an exempt transaction under TSA 5(C)(1) for three reasons.  First, Teinert has asserted the HY Tech Transaction was a sale of personal investments held by certain Youngblood Entities. (ECF No. 68, Ex. C, ¶ 5). Second, the HY Tech Defendants contend they were not "engaged in the business of selling securities." (ECF No. 68, ¶ 50). Finally, HY Tech Defendants argue the sales were "isolated transactions" because they "made no sales over the 40 years the family owned the interests." (*Id*.).

Plaintiffs' MSJ contends the HY Tech Defendants do not qualify for the exemption under TSA 5(C)(1) because they fall within the statutory definition of a "dealer" with respect to the sale of the lease interests they owned. (ECF No. 71, ¶ 38). Moreover, Plaintiffs contend Teinert—who was not licensed under the TSA—acted as an "agent" for the HY Tech Defendants in the transaction with TU. (*Id*.).

Despite the dearth of case law applying the exemption under TSA 5(C)(1), the Court finds the repeated use of the word "personal" dispositive. *See* Tex. Rev. Civ. Stat. Ann. art. 581-5(C)(1) (referring to a sale of securities "in the ordinary course of bona fide personal investment of the personal holdings of such vendor . . . ."). The TSA defines the term "person," but does not define the word "personal." *See* Tex. Rev. Civ. Stat. Ann. art. 581-4(B) (stating, [t]he terms 'person' and 'company' shall include a corporation, person, joint stock company, partnership, limited partnership, association, company . . . ."). The Court will not conflate the TSA-defined noun "person" with the undefined adjective "personal," which the Legislature uses repeatedly in the exemption.

"It is cardinal law in Texas that a court construes a statute, 'first, by looking to the plain and common meaning of the statute's words.'" ***Fitzgerald v. Adv. Spine Fixation Sys., Inc.***, 996

S.W.2d 864, 865 (Tex. 1999) (citation omitted); *see also* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 69 (2012) ("Words should be given 'their ordinary, everyday meanings,'" unless the lawmaking body has provided a specific definition, or "the context indicates they bear a technical sense."). Giving every word and phrase meaning is also cardinal to statutory interpretation. In Texas, courts are to "presume that the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen." ***TGS-NOPEC Geophysical Co. v. Combs***, 340 S.W.3d 432, 439 (Tex. 2011); *see also* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 174 (2012) ("If possible, every word and every provision is to be given effect . . . . None should be ignored.").

TSA 5(C)(1) emphasizes the personal nature of the holding(s), investment, and transaction. The transaction must be made "in the ordinary course of a bona fide *personal* investment of the *personal* holdings" of the vendor. Tex. Rev. Civ. Stat. Ann. art. 581-5(C)(1) (emphasis added). Because the TSA does not define "personal," the Court refers to the meaning of the word "personal" in Black's Law Dictionary. Black's Law Dictionary defines the adjective "personal" as "of or affecting a person," such as a personal injury, or "of or constituting personal property." Black's Law Dictionary (11th ed. 2019). The Court, therefore, concludes that the adjective "personal" describes something in relation to an individual. The Court will neither ignore the word "personal" nor its human connotation. Because of the human connotation of the word "personal," the Court concludes that a business entity cannot have personal investments or personal holdings. Therefore, the security at issue must be held by a human individual, and must be sold by a human individual, for the exemption to apply.

Here, the Purchase and Sale Agreement demonstrates that HY Tech[8] sold its interests in oil and gas leases to TU. (ECF No. 68, Ex. C-1). HY Tech is not an individual human being. (*Id.*). Therefore, the Court finds that HY Tech is ineligible for the exemption under TSA 5(C)(1) because companies cannot be protected by an exemption afforded only to individuals with "personal" holdings. Accordingly, the Court GRANTS IN PART Plaintiffs' MSJ on the grounds that HY Tech is ineligible for the exemption from registration under TSA 5(C)(1). HY Tech's MSJ is DENIED as to this issue.

### B. Limited Offering Exemptions Under Art. 581-5 §§ (I)(a), (I)(c)

Article 581-5(I) ("TSA 5(I)") provides three exemptions for sales of securities by issuers that are for limited offerings. Tex. Rev. Civ. Stat. Ann. art 581-5(I). Initially, HY Tech Defendants contended they qualify under two of those exemptions: Article 581-5(I)(a) and Article 581-5(I)(c). In their Response to Plaintiffs' Motion for Partial Summary Judgment HY Tech Defendants conceded the exemptions at TSA 5(I) do not apply because Defendants are not "issuers" of oil and gas securities pursuant to the definition provided in TSA 581-4(G). (ECF No. 110, ¶ 7). Accordingly, the Court GRANTS Plaintiffs' MSJ for this exemption, finding that HY Tech Defendants cannot claim exemptions under Articles 581-5(I)(a) and 581-5(I)(c).

### C. The Oil & Gas Exemption Under Art. 581-5 § (Q)

Tex. Rev. Civ. Stat. Ann. art. 581-5(Q) (hereinafter, "Art. 581-5(Q)") exempts from the registration requirements of the TSA transactions of the following nature:

> The sales of interests in and under oil, gas or mining leases, fees or titles, or contracts relating thereto, where (1) the total number of sales by any one owner of interests, whether whole, fractional, segregated or undivided in any single oil, gas or mineral lease, fee or title, or contract relating thereto, shall not exceed thirty-five

---

[8] The summary judgment evidence also establishes that TY Com, Inc.—another entity associated with the HY Tech Defendants—sold interests in the HY Tech Transaction. (ECF No. 68, Ex. C-1). TY Com, Inc. is a named defendant in the lawsuit. Plaintiffs, however, have not moved for summary judgment against TY Com, Inc. so the Court will not address the TY Com, Inc. interests.

16

(35) within a period of twelve (12) consecutive months and (2) no use is made of advertisement or public solicitation; provided, however, if such sale or sales are made by an agent for such owner or owners, such agent shall be licensed pursuant to this Act . . . .

Tex. Rev. Civ. Stat. Ann. art. 581-5(Q) (referred to as "TSA 5(Q)"). Stated differently, TSA 5(Q) exempts interests in oil and gas leases from registration under the TSA if two elements are met: (1) the total number of interests sold does not exceed thirty-five within a twelve month period; and (2) no use is made of advertisement or public solicitation." *Paull v. Cap. Res. Mgmt., Inc.*, 987 S.W.2d 214, 217 (Tex. App.–Austin, 1999, pet. denied). The Court will address each of the elements under TSA 5(Q) in turn.

### 1. Total Number of Interests Sold Within a Twelve-Month Period

The Court cannot discern whether element one is met because the summary judgment evidence is conflicting. Teinert submitted an affidavit stating, "neither the members of the Youngblood family, individually or through the Youngblood entities, have ever purchased or sold any oil and gas interests in the 13 years they have owned interests in HY Tech and YCVC LP until the transaction with [TU]." (ECF No. 68, Ex. C, ¶ 5). In her deposition, however, Teinert testified HY Tech sold its Schubert Lease to Mewbourne Oil and Gas in December 2016. (ECF No. 71, Ex. A, 9:14–10:1). The Court concludes the evidence contains conflicting facts as to the number of sales of oil and gas leases that HY Tech completed between 2016 and 2017. A genuine issue of material fact exists, so this issue is reserved for trial.

### 2. Public Solicitation

The parties do not allege the HY Tech Defendants used advertisement to sell their oil and gas interests. Therefore, the issue here is whether the HY Tech Defendants used public solicitation in the sale of those interests.

The exemption prohibits using *public* solicitation. Courts in Texas are required to presume

that the legislature uses each word for a purpose and that no word is superfluous. *Combs*, 340 S.W.3d at 439; *see also* Antonin Scalia & Bryan A. Garner, *supra*, at 174 (2012) ("If possible, every word and every provision is to be given effect . . . . None should be ignored."). Use of the word "public" in TSA 5(Q) suggests private discussions regarding the sale of an oil and gas interest may not defeat the exemption. In *Nicholas*, a Texas state appellate court supported the trial court's finding that a seller of securities did not engage in public solicitation or advertising for purposes of an analysis under TSA 5(Q) when the purchaser of securities "initially sought out the [securities seller] after learning of the prospective drilling operations to be conducted by the [securities seller] through a fellow officer in the bank where [purchaser] worked." 687 S.W.2d 365, 368 (Tex.App.— Tyler 1984, writ ref'd n.r.e.). The *Nicholas* court differentiated between such "personal and private dealings" and "public solicitation." *Id.* In *Paull*, another Texas state appellate court relied on *Nicholas* to affirm the trial court's determination that no public solicitation occurred when a security seller presented information about an investment opportunity to a security investor at the investor's own request. 987 S.W.2d at 217. This Court finds the *Nicholas* distinction persuasive.

As a threshold matter, the Court observes that summary judgment evidence does not support concluding this solicitation was public in nature. Like in *Nicholas*, these transactions began because Scribner initiated private sale discussions with the HY Tech Defendants. 687 S.W.2d at 368. This limited private dealing cuts against a finding of public solicitation.

By rule, the Texas State Board of Securities (the "Board") provides that Texas Administrative Code §§ 109.13(a)-(c) and (j) (hereinafter, the Texas Administrative Code shall be referred to as "TAC") applies to offerings under TSA 5(Q). This authority is derived from Tex.

18

Rev. Civ. Stat. Ann. Art. 581-5(T).[9] The rule issued by the Board provides:

> It is the intent of the State Securities Board that § 109.13(a)-(c) and (j) of this title (relating to Limited Offering Exemptions) apply to transactions made pursuant to the Securities Act, § 5.Q, and that the terms defined in § 109.13(a)-(c) and (j) of this title (relating to Limited Offering Exemptions) have the same meanings for purposes of § 5.Q as they do for the Securities Act, § 5.I.

7 Tex. Admin. Code § 109.14(a) (State Securities Board, Transactions Exempt From Registration).

TAC § 109.13, which addresses Limited Offering Exemptions, defines "public solicitation" for purposes of analyzing whether "use is made of public solicitation" in the sale of interests of oil and gas under TSA 5(Q). TAC § 109.13(a) titled "public solicitation, well-informed, and sophisticated investor" provides:

> The offer for sale or sale of the securities of the issuer would not involve the use of public solicitation under the Act, § 5.I, if the issuer, after having made a reasonable factual inquiry has reasonable cause to believe, and does believe, that the purchasers of the securities are sophisticated, well-informed investors or well-informed investors who have a relationship with the issuer . . . , and such purchasers acquire the securities as ultimate purchasers and not as underwriters or conduits to other beneficial owners or subsequent purchasers . . . The offer without advertising to a person who did not come within the class of persons described in this subsection does not alone result in public solicitation if the issuer had a reasonable cause to believe and did believe that such person fell within the class of persons described, and that such offer was not made indiscriminately.

7 Tex. Admin. Code § 109.13(a) (State Securities Board, Transactions Exempt From Registration).

In simplified terms, owner's[10] sale of a security would not involve "the use of public solicitation"

---

[9] Art. 581-5(T) provides that the TSA's registration requirements shall not apply to "[s]uch other transactions or conditions as the board by rule, regulation, or order may define or prescribe, conditionally or unconditionally." Tex. Rev. Civ. Stat. Ann. art. 581-5(T).

[10] The Court observes that TAC § 109.13(a) describes public solicitation in terms of "the securities of the issuer." 7 Tex. Admin. Code Ann. § 109.13(a). Defendants conceded they are not issuers of oil and gas securities. Despite using the word "issuer," the Court concludes the TSSB did not intend for TSA 5(Q)—which protects owners, not issuers— to be limited by the word "issuer." TAC § 109.14(a) specifically states that "[i]t is the intent of the State Securities Board that § 109.13(a)–(c) and (j) of this title … apply to transactions made pursuant to the Securities Act, § 5.Q, and that the terms defined in § 109.13(a)–(c) and (j) of this title … have the same meanings for purposes of § 5.Q as they do for the Securities Act, § 5.I." 7 Tex. Admin. Code Ann. § 109.14(a). Reading the definitions of public solicitation contained in TAC § 109.13 as only applying to issuers would render those same definitions meaningless for the owners protected by TSA 5(Q). As such, the Court will interpret the definitions of public solicitation in TAC § 109.13(a) as applying to sales of securities by an "issuer" for purposes of TSA 5(I) but as applying to sales of securities by an "owner" for purposes of TSA 5(Q).

if it is made: (1) after a reasonable factual inquiry to sophisticated, well-informed investors, or (2)

to well-informed investors who have a relationship with the owner or its principals that evinces

trust and the purchasers do not acquire the securities for resale. *Id*. Moreover, the owner must both

have reason to believe and in fact believe that the purchaser meets one of these criteria to satisfy

the exemption. *Id*. The TAC provides guidance to assist in assessing whether an investor is "well-

informed" and/or "sophisticated." 7 Tex. Admin. Code §§ 109.13(a)(1)–(2).

     **i.**     **Well-Informed Investor**

     In TAC § 109.13(a)(1), the Board provides considerations for determining if an investor is

"well-informed," stating:

> The term "well-informed" could be satisfied through the dissemination of printed
> material to each purchaser prior his or her purchase, which by a fair and actual
> presentation discloses the plan of business, the history, and the financial statements
> of the [owner], including material facts necessary in order that the statements made,
> in light of the circumstances under which they are made, not be misleading.

7 Tex. Admin. Code § 109.13(a)(1).

     Plaintiffs contend TU cannot be characterized as a "well-informed" investor because HY

Tech Defendants "*must* have, at a minimum, ensured that TU had sufficient information in order

to make an informed investment decision about the transaction." (ECF No. 71, ¶ 40) (emphasis

added). Plaintiffs then proceed to argue that the Board "provides a way to satisfy" the well-

informed investor requirement: "by disseminating to the buyer printed materials containing the

relevant financial and investment-related information." (*Id*.).

     HY Tech Defendants' MSJ argues, generally, that the oil and gas interests owned by the

HY Tech Defendants were not marketed to Plaintiffs, nor were they publicly advertised or

solicited. Instead, Scribner initiated all conversation with the HY Tech Defendants—unsolicited—

by calling Teinert. (ECF No. 68, ¶ 59). None of the HY Tech Defendants had met or heard of

Scribner, TU, or DALF before Scribner called on February 6, 2017. (*Id*.). Defendants argue TU's investments were the results of personal and private dealings between the parties and initiated by Plaintiffs' agent, Scribner. (*Id*. at ¶¶ 59–60). HY Tech Defendants argue they "had reasonable cause to believe and did believe that the purchasers of the HY Tech Wells were sophisticated and well-informed investors" because Scribner—as TU's agent— was well-informed because he identified himself as a petroleum engineer and touted how knowledgeable he was about the oil and gas industry, particularly in the Texas panhandle region. (*Id*. at ¶ 64).

The Court finds that HY Tech Defendants "made a reasonable factual inquiry" and "had reasonable cause to believe" that Scribner was well-informed. 7 Tex. Admin. Code § 109.13(a)(1). The Court recognizes that HY Tech Defendants did not disseminate printed material disclosing the plan of business, history, and financial statements of the HY Tech Transaction. Plaintiffs' MSJ acknowledges that the Board "provides *a way* . . . to satisfy" the well-informed investor requirement." (ECF No. 71, ¶ 40) (emphasis added). The Court agrees with TU that TAC § 109.13(a)(1), does, indeed, give a decision-making body a method to analyze if an investor is "well-informed"; but this method is in no way the only method of making such a determination.

The Texas legislature instructs this Court that deciding if an investor is "well-informed" "*could* be satisfied through the dissemination of printed materials" informing the purchaser about the security it is buying. 7 Tex. Admin. Code § 109.13(a)(1) (emphasis added). "To determine whether the Legislature intended a provision to be mandatory or directory, we consider the plain meaning of the words used, as well as the entire act, its nature and object, and the consequences that would follow from each construction." ***Helena Chemical Co. v. Wilkins***, 47 S.W.3d 486, 494 (Tex. 2001). The TAC does not direct that the Court shall or must use dissemination of printed materials as the sole criteria for concluding that an investor was "well-informed." The TAC merely

provides how an investor *could* be deemed "well-informed." 7 Tex. Admin. Code § 109.13(a)(1). Therefore, the Court considers the plain meaning of the word "well-informed."

Here, Scribner, as agent for DALF and TU, informed Teinert that TU holds oil and gas leases for DALF to operate. (ECF No. 68, Ex. D, 76:12–77:5). On a repeated basis, Scribner held himself out as a petroleum engineer. (ECF No. 71, Ex. A, 10:22–11:10; ECF No. 68, Ex. C, ¶ 7). Scribner informed Teinert that DALF is a "sophisticated oil and gas company based in San Antonio that owned oil and gas interests elsewhere in Texas and that DALF was looking to expand into the Texas Panhandle." (ECF No. 68, Ex. C, ¶ 7). Scribner also told Teinert he previously went on a ride along of the leases in August 2016 with a third party. (ECF No. 71, Ex. A, 11:12–15). Like the sellers in ***Nicholas***, the Defendants here did not seek out Plaintiffs as buyers for their oil and gas interest. 687 S.W.2d 3 at 368. Rather, DALF and TU's agent Scribner contacted the HY Tech Defendants himself to ask if they had any oil and gas interests for sale. The culmination of facts and evidence leads the Courts to conclude the HY Tech Defendants "made a reasonable factual inquiry" and "had reasonable cause to believe" that Scribner as TU's agent was well-informed.

The Court also finds that the HY Tech Defendants actually believed TU was well-informed at the time of the transaction. Teinert fact-checked Scribner's representations. Teinert accessed Scribner's LinkedIn profile, saw that he listed a petroleum engineering degree and work experience with other large oil companies and DALF, and "was convinced that Scribner was an oil and gas 'landman' with significant experience in the oil and gas industry." (ECF No. 67, Ex. C, ¶ 7). Teinert also researched TU and DALF. (ECF No. 68, Ex. C, ¶ 12; ECF No. 71, Ex. A, 17:16–21:3). Teinert learned that TU formed in 2014, was located in San Antonio, and was in good standing. (ECF No. 68, Ex. C-9; ECF No. 68, Ex. C, ¶ 13). Teinert also researched DALF on the Railroad Commission website. (ECF No. 68, Ex. C-8; ECF No. 68, Ex. C, ¶ 12). After her review,

she "believed that DALF was engaged in the business of exploring for or producing oil, gas, or other minerals as an ongoing business or at least was [an] oil and gas drilling company, well service company, or production company." (ECF No. 68, Ex. C, ¶ 13). Attached to HY Tech MSJ at Exhibits C-8 and C-9 are timestamped search results from Texas government websites corroborating that Teinert conducted this research before closing the HY Tech Transaction. The Court therefore finds that HY Tech Defendants actually believed TU was a well-informed investor.

The Court will now consider whether Peterson Defendants reasonably and actually believed Plaintiffs were sophisticated investors.

### ii.    Sophisticated Investor

In determining if an investor is "sophisticated," "at least the following factors should be considered":

(A) The financial capacity of the investor, to be of such proportion that the total cost of that investor's commitment in the proposed investment would not be material when compared with his total financial capacity. It may be presumed that if the investment does not exceed 20% of the investor's net worth (or joint net worth with the investor's spouse) at the time of sale that the amount invested is not material.

(B) Knowledge of finance, securities, and investments, generally. This criteria may be met by the investor's purchaser representative if such purchaser representative has such knowledge, so long as such purchaser representative:

   (i)     has no business relationship with the [owner];
   (ii)    represents only the investor and not the [owner]; and
   (iii)   is compensated only by the investor.

(C) Experience and skill in investments based on actual participation. This criteria may be met by the investor's purchaser representative if such purchaser representative has such experience and skill, so long as such purchaser representative:

   (i)     has no business relationship with the [owner];
   (ii)    represents only the investor and not the [owner]; and
   (iii)   is compensated only by the investor.

7 Tex. Admin. Code §§ 109.13(a)(2)(A)-(C). In summary form, determining if an investor is "sophisticated" requires, at a minimum, consideration of the investor's financial capacity; the investor's knowledge, or the knowledge of the investor's purchaser representative, regarding finance, securities, and investments; and the investor's experience and skill. *Id.*

Plaintiffs argue HY Tech Defendants did not have a reasonable "basis and actual belief that TU was a 'sophisticated' investor" because they did not "know[] and consider[] TU's financial capacity, how this particular transaction stood in relationship to TU's net worth, TU's knowledge of finance, securities, and investments, and TU's experience and skill in investments based on actual participation." (ECF No. 71, ¶ 41).

HY Tech MSJ advances the same arguments regarding why TU was a sophisticated investor as it did to argue TU was a well-informed investor. (ECF No. 68, ¶¶ 64–66).

The Court adopts its findings from the "well-informed investor" section above to conclude HY Tech Defendants reasonably and actually believed TU was a sophisticated investor. Scribner also had ongoing conversations with Teinert regarding reserving Oil & Gas Holdings an overriding royalty interest. (ECF No. 68, Ex. C-6). Moreover, Scribner sent Teinert an example assignment wherein Scribner conveyed the Novella Assignment to TU in October 2016. (ECF No. 68, Ex. C-6). Based on these facts, the Court concludes that HY Tech Defendants "made a reasonable factual inquiry," "had reasonable cause to believe," and "[did] believe" TU was a sophisticated investor.

### 3. Additional Considerations Under TAC § 109.13(j)

Plaintiffs contend HY Tech Defendants cannot claim the exemption under TAC § 109.13 because—in addition to failing to make a reasonable factual inquiry, having a reasonable cause to believe, and then actually believing that TU is a "well-informed" and "sophisticated" investor— they also did not satisfy the Board's further "limitations on disposition" requirement under TAC

24

§ 109.13(j).[11] Plaintiffs contend TAC § 109.13(j) imposes elements which HY Tech Defendants must satisfy in order to claim exemption TSA 5(Q).[12] (ECF No. 71, ¶ 43).

Section 109.13(j) requires the owner[13] "of a security and any person acting on its behalf" to "exercise reasonable care to assure that the purchasers are acquiring the security as an investment." 7 Tex. Admin. Code § 109.13(j). "Such reasonable care *should* include, but not be limited to," five actions. *Id*. (emphasis added). "Should" is permissive. The Court interprets the five actions listed in TAC § 109.13(j)(1)–(5) as considerations that could constitute reasonable care. In other words, defendants seeking to claim TSA 5(Q) are not required to take the steps set out in TAC § 109.13(j)(1)–(5), though the Legislature and TSSB suggests owners do to protect purchasers. All TAC § 109.13(j) requires is that owners "exercise reasonable care to assure that the purchasers are acquiring the securities as an investment." 7 Tex. Admin. Code § 109.13(j).

The Court concludes the HY Tech Defendants satisfied their duty to exercise reasonable care. Scribner told Barry that Plaintiffs already produced oil and gas in other parts of Texas and wanted to move into the panhandle. (ECF No. 68, Ex. C, ¶ 7). Teinert confirmed this was true by checking the Railroad Commission website. (ECF No. 68, Ex. C-8; ECF No. 68, Ex. C, ¶ 12). Teinert was convinced TU and DALF "were not a fly-by-night company; that they had been in business for some time." (ECF No. 71, Ex. A, 19:9–10). Teinert specifically asked Scribner if

---

[11] Under § 109.14(a) of the TAC, "[i]t It is the intent of the State Securities Board that § 109.13(a)-(c) and (j) of this title . . . apply to transactions made pursuant to the Securities Act, § 5.Q . . . ." 7 Tex. Admin. Code § 109.14(a).

[12] Notably, Plaintiffs argue that Peterson Defendants failed to meet four additional considerations. (ECF No. 71, ¶ 43). TAC § 109.13(j) lists five—not four—additional considerations. Plaintiffs have not included consideration "(3) issuing stop transfer instructions to the issuer's transfer agent, if any, with respect to the securities, or, if the issuer transfers its own securities, making a notation in the appropriate records of the issuer." 7 Tex. Admin. Code Ann. § 109.13(j)(3).

[13] Like TAC § 109.13(a), subsection (j) addresses "issuer[s]." The Court concluded at *supra* note 10 that the clear legislative and administrative intent expressed in TAC § 109.14(a) supports reading the regulations included in TAC 109.13(a) as applying to both issuers of and owners of securities. TAC § 109.14(a) includes not only TAC § 109.13(a), but also subsections (b)-(c) and (j). Tex. Admin. Code Ann. § 109.14(a). In order to be consistent, the Court will interpret the provisions of TAC § 109.13(i) as applying to issuers and owners.

DALF had a "large accounting office . . . that would be able to hand . . . joint interest billing and revenue distribution." (ECF No. 71, Ex. A, 21:18–24). Scribner told Teinert they would. (*Id.*). Teinert researched Carlos Sr. and learned that he was a businessman in real estate without any criminal records or other things she thought were negative. (ECF No. 71, Ex. A, 20:25–21:3). Based on the extensive due diligence Teinert conducted, the Court finds HY Tech Defendants exercised reasonable care to ensure the purchasers were acquiring the securities as an investment.

### 4. Conclusion for the Oil & Gas Exemption Under Art. 581-5 § (Q)

The Court finds that the HY Tech Defendants did not satisfy all of TSA 5(Q)'s elements. The Court cannot determine from the summary judgment evidence whether HY Tech Defendants sold less than thirty-five oil and gas interests in the year prior to the HY Tech Transaction. The Court finds that HY Tech Defendants established they did not use public solicitation or advertising and complied with the limitations on disposition contained in TAC § 109.13(j). Because a genuine issue of material fact exists regarding how many interests the HY Tech Defendants sold in the year prior to the HY Tech Transaction, the Court DENIES both Plaintiffs' MSJ and Peterson MSJ on TSA 5(Q) grounds.

### D. Applicability of Oil and Gas Industry Exemption Under Section 109.14(d) of the Texas Administrative Code

Through the authority provided under TSA 581-5(T), TAC § 109.14(d)(1) provides an exemption not contained within the TSA itself:

> In addition to offers and sales made pursuant to the Act, §5.Q, the State Securities Board, pursuant to the Act, §5.T, exempts from the securities registration requirements of the Act, §7, and the dealer and agent registration requirements of the Act, §12 and §18, the offer and sale of any interest in or under an oil, gas, or mining lease, fee, or title, or payments out of production in or under such leases, fees, or titles or contracts relating thereto by the owner or an agent for the owner when such offer or sale is made to persons and/or companies each of whom the owner or owner's agent shall have reasonable cause to believe and does believe meets the following criteria:

(A) is engaged in the business of exploring for or producing oil, gas, or other minerals as an ongoing business or is engaged in the practice of a profession, or discipline, which is directly related to the exploration for, production of, refining of, or marketing of oil, gas, or other minerals such as the interest being sold; or

(B) is a landman, drilling company, well service company, production company, refining company, geologist, geophysicist, petroleum engineer, earth scientist; or

(C) is an executive officer of a company whose primary plan of business involves either subparagraphs (A) or (B) of this paragraph.

7 Tex. Admin. Code Ann. § 109.14(d)(1)(A)–(C).

In other words, if an owner of an oil, gas, or minerals security (or the owner's agent) offers for sale or sells the oil, gas, or mineral security to a person or company whom the owner (or the owner's agent) has reason to believe and actually believes fits certain criteria, then the transaction is exempt from the registration requirements of the TSA. *Id.* Those criteria are: (A) engagement in the business of exploring of or producing oil, gas, or other minerals in an ongoing manner, or engagement in the practice of a profession or discipline directly related to exploring for, producing of, refining of, or marketing of oil, gas, or other minerals; (B) status as a landman, drilling company, well service company, production company, refining company, geologists, geophysicist, petroleum engineer, or earth scientists; or (C) status as an executive officer for a company whose primary plan of business involves criteria (A) or (B). *Id.* Even if a person does not meet these criteria, the owner (or owner's agent) may not lose if the offer was "not made indiscriminately." *Id.* at (d)(2). Like other TSA exemptions, no binding case interprets relevant provisions of TAC § 109.14(d).

The TSA does not define "owner." Black's Law Dictionary defines "owner" as "[s]omeone who has the right to possess, use, and convey something." Black's Law Dictionary (11th ed. 2019). Because courts in Texas interpret a statute, 'first, by looking to the plain and common meaning of

the statute's words,'" *Fitzgerald*, 996 S.W.2d at 865, the Court will adopt the Black's definition of owner.

Unlike owner, an owner's agent is defined to include:

> (A) officers, directors, and employees who are actively engaged in the day-to-day activities of the owner;
> (B) independent landmen, engineers, geologists, and consultants who have a contractual working relationship with the owner;
> (C) persons who meet the dealer registration requirements of the Securities Act, §12; and
> (D) persons who represent the owner in transactions exclusively with persons described in paragraph (1)(A)-(C) of this subsection.

Tex. Admin. Code § 109.14(d)(3) (West 2021).

The parties do not dispute that HY Tech owned the oil and gas interests sold to TU. (ECF No. 68, Ex. C-1). Teinert signed the assignments in his representative capacity. (*Id.* at 4 (signing as President of HY Tech)). Scribner told Teinert he represented DALF, an oil company that already owned oil and gas interests in Texas. (ECF No. 68, Ex. C, ¶ 7). Moreover, Scribner sent Teinert an example assignment of oil and gas interests to TU acquired in October 2016. (ECF No. 68, Ex. C-6). The Court therefore finds that Teinert, as representative of HY Tech, reasonably believed TU was in the business of producing oil and gas.

The Court further finds that that Teinert, as representative of HY Tech, actually believed TU was an industry participant. Teinert also researched TU and DALF. (ECF No. 68, Ex. C, ¶ 12; ECF No. 71, Ex. A, 17:16–21:3). Teinert learned that TU formed in 2014, was located in San Antonio, and was in good standing. (ECF No. 68, Ex. C-9; ECF No. 68, Ex. C, ¶ 13). Teinert understood "Titanurbi . . . was the primary owner and that DALF was their operating company. They are affiliates." (ECF No. 71, Ex. A, 20:8–22). Teinert also researched DALF on the Railroad Commission website. (ECF No. 68, Ex. C-8; ECF No.

28

68, Ex. C, ¶ 12). After her review, she "believed that DALF was engaged in the business of exploring for or producing oil, gas, or other minerals as an ongoing business or at least was [an] oil and gas drilling company, well service company, or production company." (ECF No. 68, Ex. C, ¶ 13). Therefore, the Court concludes HY Tech Defendants reasonably and actually believed TU was an oil and gas industry participant for purposes of TAC § 109.14(d)(1). The Court GRANTS HY Tech's MSJ and DENIES Plaintiffs' MSJ with respect to the exemption created by TAC § 109.13(d)(1).

### E. TU is Not Entitled To A Finding That HY Tech Violated the TSA

The Court finds that, as a matter of law, HY Tech does not qualify for exemptions under TSA 5(C)(1) and 5(I). Genuine issues of material fact exist as to whether HY Tech qualifies for an exemption under TSA 5(Q). The Court finds, however, that HY Tech is entitled to the exemption created by TAC § 109.14(d). Because HY Tech is can establish the TAC § 109.14(d)(1)'s exemption as a matter of law, TU is not entitled to a finding that HY Tech violated the TSA.

### F. TU is Not Entitled to a Declaration Viki Teinert Violated the TSA

TU has requested a declaratory judgment that Teinert violated the TSA by selling an unregistered security not subject to any exemption. Teinert was sued in both her individual and representative capacities. (ECF No. 68, Ex. A, at 2). Because HY Tech Defendants jointly answered, the Court cannot reach the merits on whether Teinert in her personal capacity violated the TSA. (Case No. 20-05049, ECF No. 5). Moreover, the parties have lumped the HY Tech Defendants together in their arguments about liability. The issues of Teinert's liability both as representative for HY Tech and as an individual are reserved for trial.

### G. Viki Teinert, Steve Teinert, TY Com Inc., and Youngblood Resources, Inc. Are Not Proper Parties to the Lawsuit

HY Tech MSJ argues that Viki Teinert, Steve Teinert, YCVC, and Youngblood Resources, Inc. are not proper parties to the law suit because Plaintiffs have not alleged any facts regarding or identified any documents signed by these defendants. (ECF No. 68, ¶¶ 76–77).

The parties agreed at a status conference that resolution of the Plaintiff's TSA claims were a threshold issue. (*See also* ECF No. 108, ¶ 23). Issues regarding who is a proper party are reserved for trial.

## H. Misrepresentations, Omissions, and Fraud

The parties agreed at a status conference that resolution of the Plaintiff's TSA claims were a threshold issue. (*See also* ECF No. 105, ¶ 23). Still the HY Tech Defendants sought summary judgment on the elements of common law fraud. (ECF No. 687, ¶¶ 79–80). "Plaintiffs do not contest partial summary judgment on the common law fraud claim asserted against the HY Tech Defendants." (ECF No. 108, ¶ 23). The Court will not address any further arguments regarding misrepresentations, omissions, and fraud—whether statutory or common law. Those issues are reserved for trial.

## I. HY Tech Defendants Did Not Conspire to Breach Scribner's Fiduciary Duty

HY Tech Defendants argue they did not conspire to breach Scribner's fiduciary duty. Plaintiffs did not contest partial summary judgment in favor of the HY Tech Defendants on conspiracy. (ECF No. 108, ¶ 23). Because the parties agreed the TSA exemptions were a threshold issue, the Court will not address conspiracy to breach fiduciary duty. This issue is reserved for trial.

## J. Plugging Liability

Like issues of misrepresentation, omissions, fraud, and conspiracy to breach fiduciary duty, issues of plugging liability are reserved for trial. The parties agreed that the Plaintiff's TSA claims

were threshold issues, so the Court will not reach the plugging liability issue.

## K. Remedies

Those who sell unregistered securities in violation of the TSA are liable to the buyer either "for recission or for damages if the buyer no longer owns the security." Tex. Civ. Stat. Ann. art. 581-33(A)(1). "Recission of a contract is an equitable remedy used as a substitute for monetary damages when such damages would not be adequate." *Isaacs v. Bishop*, 249 S.W.3d 100, 109–110 (Tex. Ct. App. — Texarkana 2008, pet. denied) (citations omitted). Under the TSA, in other words, a party must choose between recission or damages.

Here, Plaintiffs seek to rescind the HY Tech Transaction and "a specific dollar amount that would restore TU to its original position" based on a trial, if necessary. (ECF No. 71, ¶ 51). The Court will not grant Plaintiffs' request for recission at this junction for three reasons. First, the Court has determined as a matter of law that HY Tech is exempt from the TSA's registration requirements by virtue of the exemption in TAC § 109.14(d)(1). Second, the Court has yet to determine whether the other named defendants are proper parties to this suit or whether they may have violated the TSA. Third, there is no evidence indicating whether Plaintiffs currently own the securities. Recission is premature.

Any other relief that is not expressly granted or denied herein is reserved for trial.

## CONCLUSION

For the foregoing reasons, it is ORDERED that HY Tech Defendants' Motion for Summary Judgment (ECF No. 68) is GRANTED IN PART and DENIED IN PART as to a finding that HY Tech Defendants are eligible for the exemption under Tex. Rev. Civ. Stat. ann. 581-5(Q);

It is FURTHER ORDERED that the HY Tech Defendants' Motion for Summary Judgment (ECF No. 68) is GRANTED as to a finding that HY Tech Defendants are eligible for the exemption

under 7 Tex. Admin. Code Ann. § 109.14(d)(1);

It is FURTHER ORDERED that the HY Tech Defendants' Motion for Summary Judgment (ECF No. 68) is DENIED on all other grounds;

It is FURTHER ORDERED that Plaintiffs' Motion for Summary Judgment Against HY Tech, Inc. and Viki Teinert (ECF No. 71) is GRANTED IN PART as to a finding that HY Tech Defendants ineligible for the exemption under Tex. Rev. Civ. Stat. Ann. 581-5(C)(1);

It is FURTHER ORDERED that Plaintiffs' Motion for Summary Judgment Against HY Tech, Inc. and Viki Teinert (ECF No. 71) is GRANTED IN PART as to a finding that HY Tech Defendants ineligible for the exemption under Tex. Rev. Civ. Stat. Ann. 581-5(I);

It is FURTHER ORDERED that Plaintiffs' Motion for Summary Judgment Against HY Tech, Inc. and Viki Teinert (ECF No. 71) is DENIED on all other grounds.

The Court will issue a separate order.

# # #