

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: March 30, 2022.**

_Craig A. Gargotta_

_____
**CRAIG A. GARGOTTA
CHIEF UNITED STATES BANKRUPTCY JUDGE**

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | **CASE NO. 20-50369-cag** |
| | § | |
| **DALF ENERGY, LLC,** | § | |
| | § | **CHAPTER 11** |
| Debtor. | § | |

| | | |
|---|---|---|
| **TITANURBI21, LLC et al.,** | § | |
|     Plaintiffs. | § | |
| | § | **ADVERSARY NO. 20-05054-cag** |
| **v.** | § | |
| | § | |
| **GS OILFIELD SERVICES, LLC et al.,** | § | |
|     Defendants. | § | |

**MEMORANDUM OPINION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST H.A.N. OPERATING, INC. AND INETHA ANDERSON (ECF NO. 69) AND ANDERSON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 75)**

Came on for consideration the above-numbered adversary proceeding and, in particular,

two summary judgment motions and responsive pleadings. The first set is Plaintiffs' Motion for Summary Judgment against H.A.N. Operating, Inc. and Inetha Anderson (ECF No. 69)[1] ("Plaintiffs' MSJ"), Anderson Defendants' Response to Plaintiffs' Motion for Summary Judgment against H.A.N. Operating and Inetha Anderson (ECF No. 101) ("Defendant's Response to Plaintiffs' MSJ"), and Plaintiffs' Reply Brief in Support of their Motion for Summary Judgment Against H.A.N. Operating, Inc. and Inetha Anderson (ECF No. 115). The second set is Anderson Defendants' Motion for Summary Judgment (ECF No. 75), Anderson Defendants' Brief in Support of Motion for Summary Judgment (ECF No. 77) ("Anderson MSJ"), Plaintiffs' Response to Anderson Defendants' Motion for Summary Judgment and their Brief in Support (ECF No. 105) ("Plaintiffs' Response to Anderson MSJ"), and Anderson Defendants' Reply to Plaintiffs' Response to Anderson Defendants' Motion for Summary Judgment and Brief in Support (ECF No. 113). After a hearing on August 25, 2021, the Court took the Martindale MSJ and Plaintiffs' MSJ under advisement.[2]

For the reasons stated herein, the Court finds that the Plaintiffs' MSJ should be GRANTED IN PART and Anderson MSJ should be DENIED.

## JURISDICTION

As an initial matter, the Court finds it has jurisdiction over this matter under 28 U.S.C. §§ 1334 (a) and (b).  Venue is proper under 28 U.S.C. §§ 1408 and 1409. The bankruptcy court has authority to adjudicate this matter pursuant to the District Court's Standing Order of Reference. Plaintiffs have consented to this Court's authority to enter a final order. (Case No. 20-05049, ECF

---

[1] "ECF" denotes the electronic filing number. By way of background, the operative Complaint at issue was filed in Adversary No. 20-05049-cag, *DALF Energy, LLC and TitanUrbi21, LLC v. GS Oilfield Services, LLC et al*. The Court consolidated Adversary No. 20-05049 with this Adversary No.20-05054 on January 12, 2021. (ECF No. 32 in Adversary No. 20-05054). Unless otherwise noted, all ECF references are to Adversary No. 20-05054.

[2] At the hearing on August 25, 2021, the parties made oral argument on additional dispositive motions that are not addressed in this opinion. This opinion addresses only the Court's ruling on the Plaintiffs' MSJ (ECF No. 69) and Anderson MSJ (ECF No. 77).

No. 19). Defendants have not consented to this Court's authority to enter a final order.

## BACKGROUND

TitanUrbi21, LLC ("TU") is a self-described "investment company" that holds oil and gas interests. (ECF No. 77, Ex. A, ¶¶ 35, 38). TU also owns two entities—DALF and Titan Vac & Flow, LLC ("Titan"). DALF was the sole operator of TU's oil and gas leases. (*Id*.). Titan provided vacuum truck and managerial services for DALF's operations. (*Id*.).

DALF sought to invest in oil and gas leases in Texas. (*Id*. at ¶ 36). In or around October 2015, DALF was introduced to Jeffrey R. Scribner ("Scribner"). (*Id*.). According to DALF, Scribner represented himself as a petroleum engineer who was "the 'best' in evaluating oil and gas properties due to his prior work at Marathon Oil Company and other energy companies." (*Id*.). DALF contends Scribner represented that he obtained Bachelor of Science degrees in Petroleum Engineering, Chemistry, and Physics from Texas Tech University, where he allegedly graduated "best in his class." (*Id*.). DALF retained Scribner as "an independent contractor and its agent" "to locate and analyze potential oil and gas investment opportunities and to operate and maintain the oil and gas wells." (*Id*. at ¶ 37). After being retained by DALF at some time in 2015 or 2016, Scribner entered into a number of transactions to purchase oil and gas interests on behalf of TU. (*Id*.).

The transaction at issue in this set of summary judgment motions[3] is the sale of Texas oil and gas leases to TU from H.A.N. Operating, Inc. ("H.A.N."). Inetha Anderson ("Inetha") is President of H.A.N. Collectively, Inetha Anderson and H.A.N. are the "Anderson Defendants."

Inetha and her late husband previously managed H.A.N. and the oil and gas interests H.A.N. owned, but after Inetha's husband passed away, Inetha decided to sell the interest. (ECF

---

[3] Other parties and Plaintiffs filed various other motions for summary judgment at ECF Nos. 64, 68, 69, 71, 72, 73, 74, 76, 78. The Court will address those motions in separate orders.

No. 69, Ex. A, 9:9–18). Inetha decided to sell H.A.N.'s interests in February 2016 because she had "very little knowledge" of how to keep production going. (*Id*.). A friend of Inetha's late husband connected Inetha to Scott Miller. (*Id.* at 9:21–10:8). Scott Miller agreed to contact people he knew were interested in purchasing oil and gas interests in exchange for a portion of the sale proceeds. (*Id.* at 9:23–10:7). Inetha and Miller did not agree to a set amount until there was a buyer. (*Id.* at 11:5–7). Neither party presented competent summary judgement evidence establishing whether Miller is registered with the Texas State Securities Board ("TSSB").[4]

Miller reviewed H.A.N.'s oil and gas interests using Railroad Commission production reports and determined that H.A.N. had purchased the interests over several decades as personal investments. (ECF No. 77, Ex. F, ¶ 6). He also concluded that "H.A.N. had not any other leases in the 12-month period prior to July 5, 2016." (*Id.* at ¶ 7). but the Court cannot change Miller's affidavit to complete the sentence. Lastly, Miller deduced that neither H.A.N. nor Inetha "regularly engaged in the sale of oil and gas leases, other than as related to the business of operating and producing from oil and gas leases." (*Id*.).

Miller also used the information available from the Railroad Commission to prepare an Executive Summary describing the H.A.N. leases. (*Id.* at ¶ 8). Miller then contacted people he knows personally in the oil and gas industry to see if they were interested in purchasing the H.A.N. leases. (*Id.* at ¶ 9). He also "posted on mergernet/dealstream websites that commonly list oil and gas leases and projects." (*Id*.). Anderson Defendants admit that Miller "posted on mergernet/dealstream websites." (ECF No. 77 at ¶ 11).

During his deposition, Scribner testified that he saw the H.A.N. leases "publicly advertised

---

[4] Plaintiffs contend that the lack of evidence regarding Miller's registration with the TSSB does not create a fact issue because undisputed summary judgment evidence establishes that Inetha was not registered and Inetha acted as an agent for H.A.N. (ECF No. 69, at 19, n. 3).

for sale." (ECF No. 77, Ex. I, 18:7). Scribner could not "say with 100 percent accuracy that's where" he found the H.A.N. leases because he "did a lot of searching, also by word of mouth … but they were advertised and [he] found them." (*Id*. at 18:18–22). Scribner then called Miller about the H.A.N. leases. (*Id*. at 19:1–12; *see also* ECF No. 77, Ex. F, ¶ 10). At some point in their conversations, Miller gave the Executive Summary he prepared to Scribner. (ECF No. 77. Ex. I, 20:9–19).

Miller next took Scribner out to tour the H.A.N. leases. Scribner told Miller that "he was a petroleum engineer and was looking for additional properties for DALF Energy, LLC and Titanurbi21, LLC to purchase and operate." (ECF No.77, Ex. F, ¶ 12). "Scribner appeared to be very knowledgeable of oil and gas production," in Miller's opinion based on interactions during the tour. (*Id*. at ¶ 13). Scribner told Miller "he had been retained by DALF Energy, LLC and Titanurbi21, LLC to operate their leases and to provide broker/agent services to locate and analyze oil and gas investment opportunities." (*Id*.).

On or about June 1, 2016, Scribner informed Miller that he was interested in purchasing the H.A.N. interests for $250,000. (*Id*. at ¶ 14). Miller then called Inetha to tell her he had an interested buyer, but Miller disclosed neither Scribner's identity nor the companies Scribner represented to Inetha yet. (*Id*. at ¶ 15). Inetha and Miller agreed the price was fair for the H.A.N. interests, and Inetha authorized Miller to tell the buyer she agreed to the price. (*Id*.).

On July 5, 2016, Miller gave Scribner another tour of the H.A.N. leases. (*Id*. at ¶ 16). Scribner confirmed his desire to purchase the H.A.N. interests and wanted to close the sale the same day. (*Id*.). Miller called Inetha to confirm her availability to close. At this point, Miller informed Inetha that the purchaser would be DALF. (*Id*. at ¶ 17).

Inetha, Miller, and Scribner then met at attorney and escrow agent Colton Johnson's office

to close. (ECF No. 77 at ¶ 20). Miller met Inetha in the outer office. He then revealed to her that the buyer would instead be TU and Scribner would sign on behalf of TU. (ECF No. 69, Ex. A, 16:15–24). All parties agree closing day was the first and only time Inetha met Scribner. (*Id*. at 17:12–13). Inetha admits she knew nothing about DALF or TU on July 5, 2016. (*Id*. at 17:21–22).

H.A.N. executed an Assignment and Bill of Sale ("Assignment") of oil and gas leases located in Shackleford and Stephens Counties, Texas to TU on July 5, 2016. (ECF No. 69, Ex. B1, at 2–6). The parties do not dispute that the H.A.N. leases sold on July 5, 2016 ("Anderson Transaction") were not registered with the TSSB.

On July 5, 2017, TU, DALF, and Titan filed a lawsuit against Scribner and Hector Fino in the 23rd Judicial District Court of Gray County, Texas ("State Court Lawsuit"). Plaintiffs amended the petition in their State Court Lawsuit on December 22, 2017, to add causes of action against a number of additional defendants from whom TU purchased oil and gas interests, including a claim against the Anderson Defendants that seeks recission of the Anderson Transaction for violation of the Texas Securities Act ("TSA") based upon the sale of unregistered securities. TU filed motions for summary judgment in the State Court Lawsuit—including a motion for summary judgment against the Anderson Defendants—seeking a determination on the issue of liability under the TSA. Thereafter, the State Court Lawsuit was removed to this Court after DALF filed its chapter 11 petition.

<u>**ALLEGATIONS**</u>

At issue in both Plaintiffs' MSJ and the Anderson MSJ is whether the Anderson Transaction is an exempt transaction under the TSA. Both parties acknowledge the securities sold from the Anderson Defendants to TU were not registered under the TSA. The Anderson Defendants, however, contend their assignments of oil and gas interests are exempt under Tex.

6

Rev. Civ. Stat. Ann. art. 581-5 §§ C, I, Q, and section 109.14(d) of the Texas Administrative Code. Conversely, TU argues the alleged exemptions are inapplicable. TU seeks a declaratory judgment finding that the Anderson Defendants sold TU interests in oil and gas leases in violation of the TSA. Additionally, TU requests that the amounts of consideration paid to the Anderson Defendants for the lease interests, plus interest thereon from the date of transactions, be awarded to TU. Finally, TU and DALF seek a declaration that the Anderson Defendants will be liable for any plugging or abandonment costs for the lease interests sold by the Anderson Defendants to TU.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Bankruptcy Rule 7056 applies Rule 56(c) of the Federal Rules of Civil Procedure to adversary proceedings. If summary judgment is appropriate, the Court may resolve the case as a matter of law. *Celotex Corp.*, 477 U.S. at 323; *Blackwell v. Barton*, 34 F.3d 298, 301 (5th Cir. 1994). The Fifth Circuit has stated "[t]he standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon evidence before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

To the extent that the non-moving party asserts the existence of factual disputes, the evidence offered by the non-moving party to support those factual contentions must be of sufficient quality so that a rational fact finder might, at trial, find in favor of the non-moving party. *Matsushita*, 475 U.S. at 585–87 (1986) (non-moving party "must do more than simply show that

there is some metaphysical doubt as to material facts."); ***Anderson v. Liberty Lobby*, *Inc.***, 477 U.S. 242, 249–50 (1986) ("adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial.").  If the record "taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial." ***LeMaire v. Louisiana***, 480 F.3d 383, 390 (5th Cir. 2007).

In determining whether a genuine issue of material fact exists, the nonmoving party must respond to a proper motion for summary judgment with specific facts demonstrating that such genuine issue exists.  "[A] genuine issue of material fact is not raised by mere conclusory allegations or bald assertions unsupported by specific facts." ***Leon Chocron Publicidad Y Editoria, S.A. v. Jimmy Swaggart Ministries***, 990 F.2d 1253 (5th Cir. 1993) (citation omitted).

<u>**ANALYSIS**</u>

As a general rule, any security sold in the State of Texas must be registered. Tex. Rev. Civ. Stat. Ann. art. 581-7(A)(1) (West 2021). An interest in an oil and gas lease is defined as a security by the TSA. *See **Anderson v. Vinson Exploration, Inc.***, 832 S.W.2d 657, 662 (Tex. App.–El Paso 1992, writ denied) ("An assignment of an interest in an oil and gas lease is a 'security' as defined in Article 581-4 A of the Texas Securities Act."). The TSA exempts certain oil and gas securities from registration. *See* Tex. Riv. Stat. Ann. art. 581-5 ("Except as hereinafter in this Act specifically provided, the provisions of this Act shall not apply to the sale of any security when made in any of the following transactions and under any of the following conditions . . . ."). In this case, Inetha, on behalf of the H.A.N., sold TU oil and gas securities that were not registered.

TU and DALF allege the H.A.N.'s sale of its oil and gas leases to TU constituted the sale of an unregistered security in violation of Section 7 of the TSA. *See* Tex. Rev. Civ. Stat. Ann. art. 581-33(A)(2) ("A person who offers or sells a security in violation of Section 7 . . . of this Act is

liable to the person buying the security from him, who may sue either at law or in equity for recission or for damages if the buyer no longer owns this security.") Section 7 of the TSA provides:

> No dealer or agent shall sell or offer for sale any securities issued after September 6, 1955, except those which shall have been registered by Notification under subsection B or by Coordination under subsection C of this Section 7 and except those which come within the classes enumerated in Section 5 or Section 6 of this Act, until the issuer of such securities or a dealer registered under the provisions of this Act shall have been granted a permit by the Commissioner . . . .

Tex. Rev. Civ. Stat. Ann. art. 581-7(A). Stated differently, Section 7 of the TSA provides, in relevant part, that a "dealer" or "agent" cannot sell a security without being granted a permit, unless the security is registered, or the security qualifies under one of the enumerated exemptions provided in Art. 581-5 of the TSA. (*Id*.). Specific exemptions are described in Section 5 of the TSA. Tex. Rev. Civ. Stat. Ann. art. 581-5(A)-(U). The party claiming the exemption under Section 5 of the TSA has the burden of proof in establishing the exemption. *See* Tex. Rev. Civ. Stat. Ann. art. 581-37 ("It shall not be necessary to negative any of the exemptions in this Act in any complaint, information or indictment, or any writ or proceeding laid or brought under this Act; and the burden of proof of any such exemption shall be upon the party claiming the same.") If a sale of a security occurred in an exempt transaction, then the provisions of the TSA that require registration with the Texas State Securities Board do not apply to the sale of the security.

The Anderson MSJ contends the Anderson Transaction is exempt from the TSA under Tex. Rev. Civ. Stat. Ann. art. 581-5 §§ C(1), I, Q, and section 109.14(d) of the Texas Administrative Code ("TAC").[5] The Court will address the applicability of each exemption to the Anderson Transaction in turn.

---

[5] Tex. Rev. Civ. Stat. Ann. art. 581-5 §T ("Section 5.T") provides an exemption for "[s]uch other transactions or conditions as the board by rule, regulation, or order may define or prescribe, conditionally or unconditionally." Section 5.T allows movants to assert exemptions that are provided for by rules, regulations, or orders outside of the TSA, including the Texas Administrative Code.

## A. Exemption for Isolated Transactions Under Art. 581-5 § (C)(1)

Art. 581-5(C)(1) provides that the following transaction is exempt from the Texas Securities Act:

> Sales of securities made by or on behalf of a vendor, whether by dealer or other agent, in the ordinary course of bona fide personal investment of the personal holdings of such vendor, or change in such investment, if such vendor is not engaged in the business of selling securities and the sale or sales are isolated transactions not made in the course of repeated and successive transactions of a like character; provided, that in no event shall such sales or offerings be exempt from the provisions of this Act when made or intended by the vendor or his agent, for the benefit, either directly or indirectly, of any company or corporation except the individual vendor (other than a usual commission to said agent), and provided further, that any person acting as agent for said vendor shall be registered pursuant to this Act [.]

Tex. Rev. Civ. Stat. Ann. art. 581-5(C)(1) (referred to hereinafter as "Art. 581-5(C)(1)"). The TSA does not define the term "vendor." Black's Law Dictionary defines a vendor as "a seller, usually of real property." Black's Law Dictionary (11th ed. 2019). Moreover, there is no case law explaining what constitutes a sale "in the ordinary course of bona fide personal investment"; when a vendor is "not engaged in the business of selling securities"; or how to determine if "sales are isolated transactions not made in the course of repeated and successive transactions of a like character."

The Anderson Defendants contend their sale of oil and gas securities to TU was an exempt transaction under Art. 581-5(C)(1) for three reasons. First, the Anderson Defendants argue the leases sold were a "personal investment."[6] (ECF No. 77, ¶ 38). Second, the Anderson Defendants

---

[6] Anderson Defendants cite to Inetha's deposition (ECF No. 77, Ex. E), Inetha's affidavit (ECF No. 77, Ex. D), and reference Scott Miller's affidavit (ECF No. 77, Ex. F) without a direct citation to support the proposition that the H.A.N. interest were personal investments. The Court has reviewed the evidence cited and determined it does not substantiate the proposition asserted. Page 9 of Inetha's deposition sets out when and why Inetha decided to sell the interests. (ECF No. 77, Ex. E, 9:1–25). Inetha's affidavit does not use the word "investment" and only uses the word "personal" to attest she has personal knowledge of the facts contained in her affidavit. (ECF No. 77, Ex. D, at 1–2). The affidavit does not describe the characteristics of any investments held by any person or company. (Id.). Lastly, Scott Miller's opinion that the H.A.N. leases were personal investments is not competent summary judgment evidence on the issue. (See ECF No. 77, Ex. F, ¶ 2 (Scott Miller's "review [of the Railroad Commission reports]

assert they were not "regularly engaged in the sale of oil and gas leases." (*Id.* at ¶ 41). The Anderson Defendants argue they did not purchase and sell interests in oil and gas leases as part of their business. (*Id.* at ¶ 42). Instead, the purpose of their business was to operate oil and gas leases. (*Id.*). Third, the Martindale Defendants argue the sales were "isolated transactions" because they had not made a sale in 2015 or 2016 prior to this transaction. (*Id.* at ¶ 44).

Plaintiffs' MSJ contends the Anderson Defendants do not qualify for the exemption under Art. 581-5(C)(1) because they fall within the statutory definition of a "dealer" with respect to the sale of the lease interests they owned. Moreover, Plaintiffs argue Inetha—who was not registered under the TSA—and Miller—regarding whom there is no evidence of registration under the TSA— acted as agents for the Anderson Defendants in the transaction with TU.

Despite the dearth of case law applying the exemption under TSA 5(C)(1), the Court finds the repeated use of the word "personal" dispositive. *See* Tex. Rev. Civ. Stat. Ann. art. 581-5(C)(1) (referring to a sale of securities "in the ordinary course of bona fide personal investment of the personal holdings of such vendor . . . ."). The TSA defines the term "person," but does not define the word "personal." *See* Tex. Rev. Civ. Stat. Ann. art. 581-4(B) (stating, "[t]he terms 'person' and 'company' shall include a corporation, person, joint stock company, partnership, limited partnership, association, company . . . ."). The Court will not conflate the TSA-defined noun "person" with the undefined adjective "personal," which the Legislature uses repeatedly in the exemption.

"It is cardinal law in Texas that a court construes a statute, 'first, by looking to the plain and common meaning of the statute's words.'" ***Fitzgerald v. Adv. Spine Fixation Sys., Inc.***, 996 S.W.2d 864, 865 (Tex. 1999) (citation omitted); *see also* Antonin Scalia & Bryan A. Garner,

---

showed H.A.N. held these leases as a personal investment.")).

Reading Law: The Interpretation of Legal Texts 69 (2012) ("Words should be given 'their ordinary, everyday meanings,'" unless the lawmaking body has provided a specific definition, or "the context indicates they bear a technical sense."). Giving every word and phrase meaning is also cardinal to statutory interpretation. In Texas, courts are to "presume that the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen." *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011); *see also* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 174 (2012) ("If possible, every word and every provision is to be given effect . . . . None should be ignored.").

TSA 5(C)(1) emphasizes the personal nature of the holding(s), investment, and transaction. The transaction must be made "in the ordinary course of a bona fide *personal* investment of the *personal* holdings" of the vendor. Tex. Rev. Civ. Stat. Ann. art. 581-5(C)(1) (emphasis added). Because the TSA does not define "personal," the Court refers to the meaning of the word "personal" in Black's Law Dictionary. Black's Law Dictionary defines the adjective "personal" as "of or affecting a person," such as a personal injury, or "of or constituting personal property." Black's Law Dictionary (11th ed. 2019). The Court, therefore, concludes that the adjective "personal" describes something in relation to an individual. The Court will neither ignore the word "personal" nor its human connotation. Because of the human connotation of the word "personal," the Court concludes that a business entity cannot have personal investments or personal holdings. Therefore, the security at issue must be held by a human individual, and must be sold by a human individual, for the exemption to apply.

Here, neither party disputes that H.A.N. Operating held the oil and gas security or that H.A.N. Operating conveyed the oil and gas security to TU. (ECF No. 69, Ex. B1, at 2–6

12

(Assignment and Bill of Sale)). H.A.N. Operating is not a human being. (ECF No. 69, Ex. B2, Am. Answer to Req. for Admis. 4 (admitting H.A.N. Operating is a corporation)). H.A.N. Operating cannot be protected by the exemption. The Court therefore GRANTS summary judgement on this exemption for the Plaintiffs and DENIES summary judgment on this exemption for the Anderson Defendants.

### B. Limited Offering Exemptions Under Art. 581-5 §§ (I)(a), (I)(c)

Article 581-5(I) ("TSA 5(I)") provides three exemptions for sales of securities by issuers that are for limited offerings. Tex. Rev. Civ. Stat. Ann. art 581-5(I). Initially, Anderson Defendants contended they qualify under two of those exemptions: Article 581-5(I)(a) and Article 581-5(I)(c). In their Reply to Plaintiffs' Response to Anderson Defendants' Motion for Summary Judgment and Brief in Support (ECF No. 113), Anderson Defendants conceded the exemptions at TSA 5(I) do not apply because Anderson Defendants are not "issuers" of oil and gas securities pursuant to the definition provided in TSA 581-4(G). (ECF No. 113, ¶ 16). Accordingly, the Court GRANTS Plaintiffs' MSJ and DENIES Anderson MSJ, finding that Anderson Defendants cannot claim exemptions under Articles 581-5(I)(a) and 581-5(I)(c).

### C. The Oil & Gas Exemption Under Art. 581-5 § (Q)

Tex. Rev. Civ. Stat. Ann. art. 581-5(Q) (hereinafter, "Art. 581-5(Q)") exempts from the registration requirements of the TSA transactions of the following nature:

> The sales of interests in and under oil, gas or mining leases, fees or titles, or contracts relating thereto, where (1) the total number of sales by any one owner of interests, whether whole, fractional, segregated or undivided in any single oil, gas or mineral lease, fee or title, or contract relating thereto, shall not exceed thirty-five (35) within a period of twelve (12) consecutive months and (2) no use is made of advertisement or public solicitation; provided, however, if such sale or sales are made by an agent for such owner or owners, such agent shall be licensed pursuant to this Act . . . .

Tex. Rev. Civ. Stat. Ann. art. 581-5(Q) (referred to as "TSA 5(Q)"). Stated differently, TSA 5(Q)

"exempts interests in oil and gas leases from registration of two tests are met: (1) the total number of interests sold does not exceed thirty-five within a twelve-month period; and (2) no use is made of advertisement or public solicitation." ***Paull v. Cap. Res. Mgmt., Inc.***, 987 S.W.2d 214, 217 (Tex. App.–Austin, 1999, pet. denied). The Court will address each of the tests under TSA 5(Q) in turn.

### 1. Total Number of Interests Sold Within a Twelve-Month Period

Here, neither party disputes that the Anderson Defendants satisfied test 1: the Anderson Defendants did not make more than thirty-five sales of oil and gas interests within a period of twelve consecutive months. (ECF No. 69, Ex. B1, at 2-6; ECF No. 77. Ex. F, ¶ 7). The Anderson Defendants assigned TU their interest in less than 35 oil and gas leases, and these assignments were the only sales of oil and gas interests conducted by the Anderson Defendants in 2016 and 2017. (ECF No. 69, Ex. B1, at 2-6; ECF No. 77. Ex. F, ¶ 7).

### 2. Advertisement

The parties do not argue whether the Anderson Defendants advertised H.A.N.'s interests. Scott Miller's decision to "post" the H.A.N. leases "on mergernet/dealstream websites that commonly list oil and gas leases and projects" is, however, undisputed. (ECF No. 77, Ex. F, ¶ 9; ECF No. 77, Ex. I, 18:7).

The term "advertisement" is not defined in the TSA. Through authority provided by the TSA[7], the TSSB has codified conditions for determining if a seller of securities engaged in "advertisement." By rule, the TSSB provides that Texas Administrative Code §§ 109.13(a)-(c) and (j) (hereinafter, the Texas Administrative Code shall be referred to as "TAC") applies to offerings

---

[7] Art. 581-5(T) provides that the TSA's registration requirements shall not apply to "[s]uch other transactions or conditions as the board by rule, regulation, or order may define or prescribe, conditionally or unconditionally." Tex. Rev. Civ. Stat. Ann. art. 581-5(T).

under TSA 5(Q). This authority is derived from Tex. Rev. Civ. Stat. Ann. Art. 581-5(T). The rule

issued by the TSSB provides:

> It is the intent of the State Securities Board that § 109.13(a)-(c) and (j) of this title (relating to Limited Offering Exemptions) apply to transactions made pursuant to the Securities Act, § 5.Q, and that the terms defined in § 109.13(a)-(c) and (j) of this title (relating to Limited Offering Exemptions) have the same meanings for purposes of § 5.Q as they do for the Securities Act, § 5.I.

7 Tex. Admin. Code § 109.14(a) (State Securities Board, Transactions Exempt From Registration).

TAC § 109.13(b) gives guidance for determining whether a security was advertised. The

"main concept to be considered in a definitional analysis of the term 'advertisements,' as it is used

in § 5.I, is the method of use of the printed material."[8] Tex. Admin. Code § 109.13(b). The TAC

requires Courts to consider the following non-exclusive list of circumstances when determining if

the use of printed material constitutes advertisement:

> (1) limited printing of the material;
> (2) limited distribution of the material only to persons who the issuer, after having made a reasonable factual inquiry has reasonable cause to believe and does believe are sophisticated investors, or to persons who have a relationship with the issuer as set forth in subsection (a) of this second, or to their purchaser representatives;
> (3) control of the printing and distribution of printed material;
> (4) recognition of the necessity of compliance with the requirements set forth in this subsection on the part of the issuer and the investor. Such recognition might consist of a printed prohibition on the front in large type that the circular is for that individual's confidential use only, and may not be reproduced; and, the use of a statement warning that any action contrary to these restrictions may place such individual and the issuer in violation of the Texas Securities Act.

Tex. Admin. Code § 109.13(b)(1)–(4).

Nothing about posting leases on websites that commonly list oil and gas leases and projects

is "limited," "control[ed]," or "confidential." Accessibility on the internet is the antithesis of the

---

[8] The term "advertisement" does not include the use of printed materials regarding business plans, history, and financial statements of issues as set out in TAC § 109.13(a)(1) regarding well-informed investors. Tex. Admin. Code § 109.13(b).

considerations set out in TAC § 109.13(b). The Court, therefore, finds that the H.A.N. interests were advertised.

### 3. Public Solicitation

Like advertisement, the TAC provides guidance for determining whether a sale involved public solicitation. TAC § 109.13(a) defines "public solicitation" for purposes of analyzing whether "use is made of public solicitation" by a seller of interests of oil and gas under TSA 5(Q). TAC § 109.13(a) titled "public solicitation, well-informed, and sophisticated investor" provides:

> The offer for sale or sale of the securities of the issuer would not involve the use of public solicitation under the Act, § 5.I, if the issuer, after having made a reasonable factual inquiry has reasonable cause to believe, and does believe, that the purchasers of the securities are sophisticated, well-informed investors or well-informed investors who have a relationship with the issuer . . . , and such purchasers acquire the securities as ultimate purchasers and not as underwriters or conduits to other beneficial owners or subsequent purchasers . . . The offer without advertising to a person who did not come within the class of persons described in this subsection does not alone result in public solicitation if the issuer had a reasonable cause to believe and did believe that such person fell within the class of persons described, and that such offer was not made indiscriminately.

7 Tex. Admin. Code § 109.13(a) (State Securities Board, Transactions Exempt From Registration). In simple terms, TAC § 109.13(a) provides that the sale of a security does not involve "public solicitation" if it is made: (1) after a reasonable factual inquiry to sophisticated, well-informed investors, or (2) to well-informed investors who have a relationship with the issuer or its principals that evinces trust and the purchasers do not acquire the securities for resale. (*Id.*). Moreover, if the seller had reason to *believe*—and did *believe*—that it was making an offer to a sophisticated, well-informed investor, or a well-informed investor who has a trust relationship with the issuer.[9] (*Id.*) (emphasis added).

---

[9] The TAC provides guidance to assist in assessing whether an investor is "well-informed" and/or "sophisticated." 7 Tex. Admin. Code §§ 109.13(a)(1)–(2).

Here, Inetha testified at her deposition that she "knew" at the July 5, 2016 closing "and still [does not] know anything about either company," referring to DALF and TU. (ECF No. 69, Ex. A, 17:11–22). Because Inetha testified to her affirmative lack of any knowledge about DALF and TU when she closed the Anderson Transaction, Inetha could not have had a reasonable and actual belief that TU was a sophisticated, well-informed investor. Therefore, the sale of the H.A.N. leases cannot satisfy TAC § 109.13(a)'s no public solicitation requirement for purposes of TSA 5(Q).

### 4. Additional Considerations Under TAC § 109.13

Plaintiffs contend Anderson Defendants cannot claim the exemption under TAC § 109.13 because—in addition to failing to make a reasonable factual inquiry, having a reasonable cause to believe, and then actually believing that TU is a "well-informed" and "sophisticated" investor— they also did not satisfy the Board's further "limitations on disposition" requirement under TAC § 109.13(j).[10]

Section 109.13(j) requires the owner[11] "of a security and any person acting on its behalf" to "exercise reasonable care to assure that the purchasers are acquiring the security as an investment." 7 Tex. Admin. Code § 109.13(j). "Such reasonable care *should* include, but not limited to," five actions. *Id*. (emphasis added). "Should" is permissive. The Court interprets the five actions listed in TAC § 109.13(j)(1)–(5) as considerations that could constitute reasonable

---

[10] Under § 109.14(a) of the TAC, "[i]t It is the intent of the State Securities Board that § 109.13(a)-(c) and (j) of this title . . . apply to transactions made pursuant to the Securities Act, § 5.Q . . . ." 7 Tex. Admin. Code § 109.14(a).

[11] TAC § 109.13(j) addresses "issuer[s]." Defendants conceded they are not issuers of oil and gas securities. Despite using the word "issuer," the Court concludes the TSSB did not intend for TSA 5(Q)—which protects owners, not issuers— to be limited by the word "issuer." TAC § 109.14(a) specifically states that "[i]t is the intent of the State Securities Board that § 109.13(a)–(c) and (j) of this title … apply to transactions made pursuant to the Securities Act, § 5.Q, and that the terms defined in § 109.13(a)–(c) and (j) of this title … have the same meanings for purposes of § 5.Q as they do for the Securities Act, § 5.I." 7 Tex. Admin. Code Ann. § 109.14(a). Reading the definitions of public solicitation contained in TAC § 109.13 as only applying to issuers would render those same definitions meaningless for the owners protected by TSA 5(Q). As such, the Court will interpret the definitions of public solicitation in TAC § 109.13(j) as applying to sales of securities by an "issuer" for purposes of TSA 5(I) but as applying to sales of securities by an "owner" for purposes of TSA 5(Q).

care. In other words, defendants seeking to claim TSA 5(Q) are not required to take the steps set out in TAC § 109.13(j)(1)–(5), though the Legislature and TSSB suggests owners do to protect purchasers. All TAC § 109.13(j) requires is that owners "exercise reasonable care to assure that the purchasers are acquiring the securities as an investment." 7 Tex. Admin. Code § 109.13(j).

According to Plaintiffs, Anderson Defendants were required to, but did not, make a reasonable inquiry to determine if TU was acquiring the security for itself or another in contravention of TAC § 109.13(j)(1). (ECF No. 69, ¶ 42). Plaintiffs argue Anderson Defendants did not satisfy the elements of TAC § 109.13(j)(1). (ECF No. 69, ¶ 42).

The Court finds there a fact issue exists as to whether Anderson Defendants exercised their duty. On the one hand, Inetha hired Miller to help her with in an unfamiliar industry. (ECF No. 69, Ex. A, 9:23–10:7). On the other hand, Inetha admits she knew nothing about DALF or TU at the time of closing. (*Id.* at 17:21–22). Because of this conflicting evidence regarding any effort to assure the purchasers were acquiring the securities as an investment, the issue is reserved for trial.

### 5. Conclusion for the Oil & Gas Exemption Under Art. 581-5 § (Q)

The Court finds that the Anderson Defendants satisfied only one element of TSA 5(Q). Anderson Defendants did not sell more than thirty-five oil and gas interests within a twelve-month period. Though Anderson Defendants satisfied the first element, the sale of H.A.N.'s interests involved advertising. Moreover, because Inetha Anderson knew nothing about TU (or DALF), she could not demonstrate she reasonably and actually believed TU was a "well-informed" and "sophisticated" investor to establish non-use of public solicitation. Lastly, a fact issue exists as to whether Anderson Defendants exercised reasonable care to assure the purchasers were acquiring the securities as an investment under TAC § 109.13(j)(1). Without evidence to support all elements of the exemption, the Court GRANTS Plaintiffs' MSJ and DENIES Anderson Defendant MSJ as

to TSA 5(Q).

**D. Applicability of Oil and Gas Industry Exemption Under Section 109.14(d) of the Texas Administrative Code**

Through the authority provided under TSA 581-5(T), TAC § 109.14(d)(1) provides an exemption not contained within the TSA itself:

> In addition to offers and sales made pursuant to the Act, §5.Q, the State Securities Board, pursuant to the Act, §5.T, exempts from the securities registration requirements of the Act, §7, and the dealer and agent registration requirements of the Act, §12 and §18, the offer and sale of any interest in or under an oil, gas, or mining lease, fee, or title, or payments out of production in or under such leases, fees, or titles or contracts relating thereto by the owner or an agent for the owner when such offer or sale is made to persons and/or companies each of whom the owner or owner's agent shall have reasonable cause to believe and does believe meets the following criteria.
>
> (A) is engaged in the business of exploring for or producing oil, gas, or other minerals as an ongoing business or is engaged in the practice of a profession, or discipline, which is directly related to the exploration for, production of, refining of, or marketing of oil, gas, or other minerals such as the interest being sold; or
>
> (B) is a landman, drilling company, well service company, production company, refining company, geologist, geophysicist, petroleum engineer, earth scientist; or
>
> (C) is an executive officer of a company whose primary plan of business involves either subparagraphs (A) or (B) of this paragraph.

7 Tex. Admin. Code Ann. § 109.14(d)(1)(A)–(C) (West 2021).

In other words, if an owner of an oil, gas, or minerals security (or the owner's agent) offers for sale or sells the oil, gas, or mineral security to a person or company whom the owner (or the owner's agent) has reason to believe and does believe fits certain criteria, then the transaction is exempt from the registration requirements of the TSA. (*Id.*). Those criteria are: (A) engagement in the business of exploring of or producing oil, gas, or other minerals in an ongoing manner, or being engaged in the practice of a profession or discipline directly related to exploring for, producing of, refining of, or marketing of oil, gas, or other minerals; (B) status as a landman, drilling company, well service company, production company, refining company, geologists, geophysicist,

petroleum engineer, or earth scientists; or (C) status as an executive officer for a company whose primary plan of business involves criteria (A) or (B). (*Id.*). Even if a person does not meet these criteria, the owner (or owner's agent) may not lose if the offer was "not made indiscriminately." (*Id.* at (d)(2)). Like other TSA exemptions, no binding case interprets relevant provisions of TAC § 109.14(d).

The TSA does not define "owner." Black's Law Dictionary defines "owner" as "[s]omeone who has the right to possess, use, and convey something." Black's Law Dictionary (11th ed. 2019). Because courts in Texas interpret a statute, 'first, by looking to the plain and common meaning of the statute's words,'" *Fitzgerald*, 996 S.W.2d at 865, the Court will adopt the Black's definition of owner.

Unlike owner, an owner's agent is defined to include:

> (A) officers, directors, and employees who are actively engaged in the day-to-day activities of the owner;
> (B) independent landmen, engineers, geologists, and consultants who have a contractual working relationship with the owner;
> (C) persons who meet the dealer registration requirements of the Securities Act, §12; and
> (D) persons who represent the owner in transactions exclusively with persons described in paragraph (1)(A)-(C) of this subsection.

Tex. Admin. Code § 109.14(d)(3) (West 2021).

Here, H.A.N. owned the leases conveyed. (ECF No. 69, Ex. B1, at 2–6). Inetha signed the Assignment in her capacity as President of H.A.N. (ECF No. 69, Ex. B1, at 2). Inetha admits that she knew nothing about TU at the time of the assignment. (ECF No. 69, Ex. A, 17:21–22). Because she knew nothing, Inetha could not have reasonably and actually believed TU was industry participant. The Court, therefore, GRANTS Plaintiffs' MSJ and DENIES Anderson MSJ on the Industry Participant exemption created by TAC § 109.14(d).

### E.  TU is Entitled to a Declaration that H.A.N Operating Violated the TSA

The Court finds that, as a matter of law, H.A.N. does not qualify for exemptions under TSA 5(C)(1), 5(I), and 5(Q), or under the exemption created by TAC 109.14(d). At this juncture, the Court cannot find that H.A.N. met any exemption argued. The Court also finds from undisputed facts that the H.A.N. interests were unregistered when sold. Because H.A.N. cannot meet any exemption argued and sold an unregistered security, the Court declares that H.A.N. violated the TSA.

### F.  TU is Not Entitled to a Declaration that Inetha Anderson Violated the TSA

TU has requested a declaratory judgment that Inetha violated the TSA by selling an unregistered security not subject to any exemption. Inetha was sued in her individual and representative capacity. (ECF No. 77, Ex. A, at 2). Anderson Defendants—both Inetha and H.A.N.—importantly filed a joint answer to the complaint. (Case No. 20-05049, ECF No. 7). Because Anderson Defendants jointly answered, the Court cannot reach the merits on whether Inetha in her personal capacity violated the TSA. Moreover, the parties have lumped H.A.N., Inetha in her personal capacity, and Inetha in her representative capacity together in their arguments about liability. The issues of Inetha's liability both as a representative for H.A.N. and as an individual is reserved for trial.

### G.  Misrepresentations, Omissions, and Fraud

The parties agreed at a status conference that resolution of the Plaintiff's TSA claims were a threshold issue. (*See also* ECF No. 105, ¶ 23). Still the Anderson Defendants sought summary judgment on the elements of common law fraud. (ECF No. 77, ¶¶ 76–79). Plaintiffs concede the claim for common law fraud against the Anderson Defendants. (ECF No. 105, ¶¶ 23-24).  The Court will not address any further arguments regarding misrepresentations, omissions, and fraud—

whether statutory or common law. Those issues are reserved for trial.

### H. Plugging Liability

Like issues of misrepresentation, omissions, and fraud, issues of plugging liability are reserved for trial. The parties agreed that the Plaintiff's TSA claims were threshold issues, so the Court will not reach the plugging liability issue.

### I. Remedies

Those who sell unregistered securities in violation of the TSA are liable to the buyer either "for recission or for damages if the buyer no longer owns the security." Tex. Civ. Stat. Ann. art. 581-33(A)(1). "Recission of a contract is an equitable remedy used as a substitute for monetary damages when such damages would not be adequate." *Isaacs v. Bishop*, 249 S.W.3d 100, 109 (Tex. Ct. App.—Texarkana 2008, pet. denied) (citations omitted). Under the TSA, in other words, a party must choose between recission or damages.

Here, Plaintiffs seek to rescind the Anderson Transaction and "a specific dollar amount that would restore TU to its original position" based on a trial, if necessary. (ECF No. 69, ¶ 50). The Court will not grant Plaintiffs' request for recission, however, because there is no evidence indicating whether Plaintiffs currently own the securities. Until ownership is determined, recission is premature.

Any other relief that is not expressly granted or denied herein is reserved for trial.

### CONCLUSION

For the reasons stated on the record, it is ORDERED that Plaintiff's Motion for Summary Judgment (ECF No. 69) is GRANTED IN PART and DENIED IN PART.

Is it FURTHER ORDERED that Anderson Defendants' Motion for Summary Judgment (ECF No. 75) is GRANTED IN PART and DENIED IN PART.

The Court will issue a separate order.

# # #