

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: March 30, 2022.**

_Craig A. Gargotta_

**CRAIG A. GARGOTTA**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 20-50369-cag |
| | § | |
| DALF ENERGY, LLC, | § | |
| | § | CHAPTER 11 |
| Debtor. | § | |

| | | |
|---|---|---|
| TITANURBI21, LLC et al., | § | |
| Plaintiffs. | § | |
| | § | |
| | § | ADVERSARY NO. 20-05054-cag |
| v. | § | |
| | § | |
| GS OILFIELD SERVICES, LLC et al., | § | |
| Defendants. | § | |

**MEMORANDUM OPINION ON MARTINDALE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 64) AND PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AGAINST RUSSELL MARTINDALE, JEAN MARTINDALE, PRAIRIE OIL COMPANY, SANABI OIL COMPANY, AND JMR GAS LLC (ECF NO. 73)**

Came on for consideration the above-numbered adversary proceeding and, in particular,

1

two summary judgment motions and responsive pleadings. The first set is Martindale Defendants'

Motion for Summary Judgment (ECF No. 64)[1], Martindale Defendants' Brief in Support of Motion

for Summary Judgment (ECF No. 65) ("Martindale MSJ"), Plaintiffs' Response to Martindale

Defendants' Motion for Summary Judgment and Their Brief in Support of Same (ECF No. 107)

("Plaintiffs' Response to Martindale MSJ"), and Martindale Defendants' Reply to Plaintiffs'

Response to Martindale Defendants' Motion for Summary Judgment and Brief in Support (ECF

No. 112). The second set is Plaintiffs' Motion for Summary Judgment Against Russell Martindale,

Jean Martindale, Prairie Oil Company, Sanabi Oil Company, and JMR Gas, LLC (ECF No. 73)

("Plaintiffs' MSJ"), Martindale Defendants' Response to Plaintiffs' Motion for Summary

Judgment Against Russell Martindale, Jean Martindale, Prairie Oil Company, Sanabi Oil

Company, and JMR Gas LLC (ECF No. 102) ("Martindale Response to Plaintiffs' MSJ"), and

Plaintiffs' Reply Brief in Support of Their Motion for Summary Judgment Against the Martindale

Defendants (ECF No. 116). After a hearing on August 25, 2021, the Court took the Martindale

MSJ and Plaintiffs' MSJ under advisement.[2]

For the reasons stated herein, the Court finds that the Martindale MSJ should be

GRANTED IN PART and DENIED IN PART and Plaintiffs' MSJ should be GRANTED IN

PART and DENIED IN PART.

### JURISDICTION

As an initial matter, the Court finds it has jurisdiction over this matter under 28 U.S.C.

§§ 1334 (a) and (b). Venue is proper under 28 U.S.C. §§ 1408 and 1409. The bankruptcy court

---

[1] "ECF" denotes the electronic filing number. By way of background, the operative Complaint at issue was filed in Adversary No. 20-05049-cag, *DALF Energy, LLC and TitanUrbi21, LLC v. GS Oilfield Services, LLC et al*. The Court consolidated Adversary No. 20-05049 with this Adversary No.20-05054 on January 12, 2021. (ECF No. 32 in Adversary No. 20-05054). Unless otherwise noted, all ECF references are to Adversary No. 20-05054.

[2] At the hearing on August 25, 2021, the parties made oral argument on additional dispositive motions that are not addressed in this opinion. This opinion addresses only the Court's ruling on the Martindale MSJ (ECF No. 65) and Plaintiffs' MSJ (ECF No. 73).

has authority to adjudicate this matter pursuant to the District Court's Standing Order of Reference. Plaintiffs have consented to this Court's authority to enter a final order. (Case No. 20-05049, ECF No. 19). Defendants consented to a magistrate judge's authority to conduct a trial. (Case No. 20-05049, ECF No. 35).

## BACKGROUND

TitanUrbi21, LLC ("TU") is a self-described "investment company" that holds oil and gas interests. (ECF No. 65, Ex. A, ¶¶ 35, 38). TU also owns two entities—DALF and Titan Vac & Flow, LLC ("Titan"). DALF was the sole operator of TU's oil and gas leases. (*Id*.) Titan provided vacuum truck and managerial services for DALF's operations. (*Id*.)

DALF sought to invest in oil and gas leases in Texas. (*Id*. at ¶ 36). In or around October 2015, DALF was introduced to Jeffrey R. Scribner ("Scribner"). (*Id*.). According to DALF, Scribner represented himself as a petroleum engineer who was "the 'best' in evaluating oil and gas properties due to his prior work at Marathon Oil Company and other energy companies." (*Id*.). DALF contends Scribner represented that he obtained Bachelor of Science degrees in Petroleum Engineering, Chemistry, and Physics from Texas Tech University, where he allegedly graduated "best in his class." (*Id*.) DALF retained Scribner as "an independent contractor and its agent" "to locate and analyze potential oil and gas investment opportunities and to operate and maintain the oil and gas wells." (*Id*. at ¶ 37). After being retained by DALF at some time in 2015 or 2016, Scribner entered into a number of transactions to purchase oil and gas interests on behalf of TU. (*Id*.)

The transaction at issue in this set of summary judgment motions[3] is the sale of Texas oil and gas leases to TU from Russell Martindale ("Russell"), Jean Martindale ("Jean"), Prairie Oil

---

[3] Other parties and Plaintiffs filed various other motions for summary judgment at ECF Nos. 66, 68, 69, 71, 72, 74, 75, 76, and 78. The Court will address those motions in separate orders.

Company,[4] Sanabi Oil Company,[5] and JMR Gas, LLC[6] (collectively, the "Martindale Defendants"). The Martindale Defendants purchased oil and gas leases over the years as a personal investment. (ECF No. 65, Ex. E, 36:2–5). The Martindale Defendants maintain they never advertised their oil and gas leases for sale, but "as oil field rumors would go around," people would ask Russell if he would be willing to sell the oil and gas interests. (ECF No. 65, Ex. E, 11:7–11,44:3–6). In February 2017 Scribner called the office where the Martindale Defendants ran their oil and gas business out of, asking if Russell was willing to sell the Martindale Defendants' production. (ECF No. 65, Ex. E, 11:2–9). Scribner identified himself as an agent for TU and DALF and told Russell that he was a petroleum engineer who DALF hired to find leases in the Texas Panhandle. (ECF No. 65, Ex. E, 42:2–9, Ex. F, 7:13–24).

Russell and Jean—neither of whom are registered under the Texas Securities Act—each had a telephone conversation with Scribner to discuss the sale of the Martindale Defendants' oil and gas interests. (ECF No. 65, Ex. H, 7:23–9:13). Scribner told Russell he had reviewed information about the oil and gas leases being offered for sale through a public online database. (ECF No. 65, Ex. E, 13:19–14:1). Russell contends Scribner stated he "looked at the production, the history, and knew all about [the] area," and that DALF "was going to revitalize and redo several of the [Martindale's] wells to bring it back to the former glory." (ECF No. 65, Ex. E, 35:6–11). Russell and Jean agreed that the Martindale Defendants would sell their oil and gas interests to DALF for $300,000. (ECF No. 65, Ex. E, 13:2–18). Thereafter, Scribner prepared an offer letter confirming that DALF would purchase certain of the Martindales' interests in oil and gas leases

---

[4] Prairie Oil Company is owned by Jean and Russell Martindale, who are father and son. (ECF No. 65, Ex. E, 8:1–7).
[5] Sanabi Oil Company is owed by Jean, Mary, and Russell Martindale, who are father, mother, and son. (ECF No. 65, Ex. E, 8:8–15).
[6] JMR Gas, LLC is owned by Russell and Jean Martindale. (ECF No. 65, Ex. E, 8:16–18).

("Martindale Interests") for $300,000. (ECF No. 65, Ex. S). Scribner signed the offer letter "Jeff Scribner P.E. CEO/Managing Member DALF Energy LLC. (*Id*. at 1).

Jean, who is an attorney, and Russell prepared a Purchase and Sale Agreement, an Assignment of Oil and Gas Lease, and a Bill of Sale ("Closing Documents"). (ECF No. 65, Ex. H, 12:3–20). The Closing Documents were sent to Scribner for review and revisions. (ECF No. 65, Ex. H, 18:17–19:1). At Scribner's request, the Assignment of Oil and Gas Lease included a reservation of an overriding royalty interest for Oil & Gas Holdings, LLC—a business owned by Scribner individually. (ECF No. 65, Ex. E, 22:2–25:9). Carlos, Sr. signed all of the Closing Documents. (*See, e.g.,* ECF No. 65, Ex. C, at 4, Ex. D, at 1). On February 21, 2017, sale of the Martindale Interests to TU closed. (ECF No. 65, Ex. C, at 4, Ex. D, at 1). The Martindale Interests consisted of oil and gas leases, which were not registered under the Texas Securities Act.

On July 5, 2017, TU, DALF, and Titan filed a lawsuit against Scribner and Hector Fino in the 23rd Judicial District Court of Gray County, Texas ("State Court Lawsuit"). Plaintiffs amended the petition in their State Court Lawsuit on December 22, 2017, to add causes of action against a number of additional defendants from whom TU purchased oil and gas interests, including a claim against the Martindale Defendants that seeks recission of the Martindale Transaction for violation of the Texas Securities Act based upon the sale of unregistered securities. TU filed motions for summary judgment in the State Court Lawsuit—including a motion for summary judgment against the Martindale Defendants—seeking a determination on the issue of liability under the Texas Securities Act. Thereafter, the State Court Lawsuit was removed to this Court after DALF filed its chapter 11 petition.

## ALLEGATIONS

At issue in both Plaintiffs' MSJ and the Martindale MSJ is whether the Martindale

Transaction is an exempt transaction under the Texas Securities Act ("TSA"). Both parties acknowledge the securities sold from the Martindale Defendants to TU were not registered under the Texas Securities Act. The Martindale Defendants, however, contend their assignments of oil and gas interests are exempt under Tex. Rev. Civ. Stat. Ann. art. 581-5 §§ C, Q, I, and section 109.14(d) of the Texas Administrative Code. Conversely, TU argues the alleged exemptions are inapplicable. TU seeks a declaratory judgment finding that the Martindale Defendants sold TU interests in oil and gas leases in violation of the TSA. Additionally, TU requests that the amounts of consideration paid to the Martindale Defendants for the lease interests, plus interest thereon from the date of transactions, be awarded to TU. Finally, TU and DALF seek a declaration that the Martindale Defendants will be liable for any plugging or abandonment costs for the lease interests sold by the Martindale Defendants to TU.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Bankruptcy Rule 7056 applies Rule 56(c) of the Federal Rules of Civil Procedure to adversary proceedings. If summary judgment is appropriate, the Court may resolve the case as a matter of law. *Celotex Corp.*, 477 U.S. at 323; *Blackwell v. Barton*, 34 F.3d 298, 301 (5th Cir. 1994). The Fifth Circuit has stated "[t]he standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon evidence before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

To the extent that the non-moving party asserts the existence of factual disputes, the evidence offered by the non-moving party to support those factual contentions must be of sufficient quality so that a rational fact finder might, at trial, find in favor of the non-moving party. *Matsushita*, 475 U.S. at 585–87 (1986) (non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts."); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) ("adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial."). If the record "taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial." *LeMaire v. Louisiana*, 480 F.3d 383, 390 (5th Cir. 2007).

In determining whether a genuine issue of material fact exists, the nonmoving party must respond to a proper motion for summary judgment with specific facts demonstrating that such genuine issue exists. "[A] genuine issue of material fact is not raised by mere conclusory allegations or bald assertions unsupported by specific facts." *Leon Chocron Publicidad Y Editoria, S.A. v. Jimmy Swaggart Ministries*, 990 F.2d 1253 (5th Cir. 1993) (citation omitted).

<u>**ANALYSIS**</u>

As a general rule, any security sold in the State of Texas must be registered. Tex. Rev. Civ. Stat. Ann. art. 581-7(A)(1) (West 2021). An interest in an oil and gas lease is defined as a security by the Texas Securities Act ("TSA"). *See Anderson v. Vinson Exploration, Inc.*, 832 S.W.2d 657, 662 (Tex. App. –El Paso 1992, writ denied) ("An assignment of an interest in an oil and gas lease is a 'security' as defined in Article 581-4 A of the Texas Securities Act."). The TSA exempts certain oil and gas securities from registration. *See* Tex. Riv. Stat. Ann. art. 581-5 ("Except as hereinafter in this Act specifically provided, the provisions of this Act shall not apply to the sale of any security when made in any of the following transactions and under any of the following

conditions . . . ."). In this case, Russell, on behalf of the Martindale Defendants, sold TU oil and gas securities that were not registered.

TU and DALF allege the Russell's sale of the Martindale Defendants' oil and gas leases to TU constituted the sale of an unregistered security in violation of Section 7 of the TSA. *See* Tex. Rev. Civ. Stat. Ann. art. 581-33(A) ("A person who offers or sells a security in violation of Section 7 . . . of this Act is liable to the person buying the security from him, who may sue either at law or in equity for recission or for damages if the buyer no longer owns this security.") Section 7 of the TSA provides:

> No dealer or agent shall sell or offer for sale any securities issued after September 6, 1955, except those which shall have been registered by Notification under subsection B or by Coordination under subsection C of this Section 7 and except those which come within the classes enumerated in Section 5 or Section 6 of this Act, until the issuer of such securities or a dealer registered under the provisions of this Act shall have been granted a permit by the Commissioner . . . .

Tex. Rev. Civ. Stat. Ann. art. 581-7(A). Stated differently, Section 7 of the TSA provides, in relevant part, that a "dealer" or "agent" cannot sell a security without being granted a permit, unless the security is registered, or the security qualifies under one of the enumerated exemptions provided in Art. 581-5 of the TSA. *Id.* Specific exemptions are described in Section 5 of the TSA. Tex. Rev. Civ. Stat. Ann. art. 581-5(A)-(U). The party claiming the exemption under Section 5 of the TSA has the burden of proof in establishing the exemption. *See* Tex. Rev. Civ. Stat. Ann. art. 581-37 ("It shall not be necessary to negative any of the exemptions in this Act in any complaint, information or indictment, or any writ or proceeding laid or brought under this Act; and the burden of proof of any such exemption shall be upon the party claiming the same.") If a sale of a security occurred in an exempt transaction, then the provisions of the TSA that require registration with the Texas State Securities Board do not apply to the sale of the security.

The Martindale MSJ contends the Martindale Transaction is exempt from the TSA under

Tex. Rev. Civ. Stat. Ann. art. 581-5 §§ C(1), I, Q, and section 109.14(d) of the Texas Administrative Code.[7] The Court will address the applicability of each exemption to the Martindale Transaction in turn.

### A. Exemption for Isolated Transactions Under Art. 581-5 § (C)(1)

Art. 581-5(C)(1) provides that the following transaction is exempt from the Texas Securities Act:

> Sales of securities made by or in behalf of a vendor, whether by dealer or other agent, in the ordinary course of bona fide personal investment of the personal holdings of such vendor, or change in such investment, if such vendor is not engaged in the business of selling securities and the sale or sales are isolated transactions not made in the course of repeated and successive transactions of a like character; provided, that in no event shall such sales or offerings be exempt from the provisions of this Act when made or intended by the vendor or his agent, for the benefit, either directly or indirectly, of any company or corporation except the individual vendor (other than a usual commission to said agent), and provided further, that any person acting as agent for said vendor shall be registered pursuant to this Act [.]

Tex. Rev. Civ. Stat. Ann. art. 581-5(C)(1) (referred to hereinafter as "Art. 581-5(C)(1)"). The TSA does not define the term "vendor." Black's Law Dictionary defines a vendor as "a seller, usually of real property." Black's Law Dictionary (11th ed. 2019). Moreover, there is no case law explaining what constitutes a sale "in the ordinary course of bona fide personal investment"; when a vendor is "not engaged in the business of selling securities"; or how to determine if "sales are isolated transactions not made in the course of repeated and successive transactions of a like character."

The Martindale Defendants contend their sale of oil and gas securities to TU was an exempt transaction under Art. 581-5(C)(1) for three reasons. First, the sale was "in the ordinary course of

---

[7] Tex. Rev. Civ. Stat. Ann. art. 581-5 §T ("Section 5.T") provides an exemption for "[s]uch other transactions or conditions as the board by rule, regulation, or order may define or prescribe, conditionally or unconditionally." Section 5.T allows movants to assert exemptions that are provided for by rules, regulations, or orders outside of the TSA, including the Texas Administrative Code.

bona fide personal investment" of the Martindale Defendants, as sellers. Russell stated he purchased oil and gas leases from different entities over the years as a personal investment for his family. (ECF No. 65, Ex. E, 36:8–10). The Martindale Defendants contend they do not regularly engage in the sale of oil and gas leases other than as relating to the business of operating and producing from oil and gas leases. Second, the Martindale Defendants were not "engaged in the business of selling securities." (ECF No. 65, ¶ 58). The Martindale Defendants argue they did not purchase and sell interests in oil and gas leases as part of their business. Instead, the purpose of their business was to operate oil and gas leases as a personal investment. Russell is in the cattle business. (ECF No. 65, Ex. E, 7:22–24). Jean is an attorney. (ECF No. 65, Ex. H, 6:13). Third, the Martindale Defendants argue the sales were "isolated transactions" because they had not made a sale in 2016 or 2017 prior to this transaction. (ECF No. 65, ¶ 58).

Plaintiffs' MSJ contends the Martindale Defendants do not qualify for the exemption under Art. 581-5(C)(1) because they fall within the statutory definition of a "dealer" with respect to the sale of the lease interests they owned. Moreover, Plaintiffs contend Russell—who was not registered under the TSA—acted as an "agent" for the Martindale Defendants in the transaction with TU.

**1. Russell Martindale's and Jean Martindale's Eligibility Under Art. 581-5 § (C)(1)**

The Court finds it must deny Plaintiffs' MSJ and Martindale MSJ on the issue of whether Russell and Jean are eligible for the exemption under Art. 581-5(C)(1). To assess whether Art. 581-5(C)(1) is applicable, the Court must first determine whether Russell and Jean are dealers or vendors. Because the TSA does not define the term "vendor," the Court will rely on Blacks Law Dictionary's definition of a vendor as "a seller, usually of real property." Black's Law Dictionary (11th ed. 2019). Meanwhile, the TSA defines a dealer as follows:

> The term "dealer" shall include every person or company other than an agent, who engages in this state, either for all of part of his or its time, directly or through an agent, in selling, offering for sale or delivery or soliciting subscriptions to or others for, or undertaking to dispose of, or to invite offers for any security or securities and every person or company who deals in any other manner in any security or securities within this state . . . .

Tex. Rev. Civ. Stat. Ann. art. 581-4(C). Furthermore, "[a]ny issuer other than a registered dealer of a security or securities, who, directly or through any person or company, other than a registered dealer, . . . makes sales of its own securities shall be deemed a dealer" required to comply with the TSA, unless the transaction is "within the exemptions contained of Section 5" of the TSA. *Id.* (emphasis added).

The Court does not have enough evidence to determine if Russell and Jean should be defined as issuers, vendors, or dealers. For example, the Court cannot glean if Russell or Jean sold oil and gas interests prior to its sale to TU. This information is important because a history of selling or offering for sale oil and gas interests would support deeming Russell or Jean are "dealers" pursuant to the definition found in Tex. Rev. Civ. Stat. Ann. art. 581-4(C). If Russell or Jean are "dealers," then they are ineligible for the exemption under Art. 581-5(C)(1) because they would not be "vendors." Moreover, additional information regarding Russell's or Jean's prior sales of securities, if any, would guide the Court in examining if Russell or Jean are "not engaged in the business of selling securities" and if "the sale is an isolated transaction not made in the course of repeated and successive transactions of a like character." Tex. Rev. Civ. Stat. Ann. art. 581-5(C)(1). Because there is no evidence indicating whether Russel's or Jean's sales were isolated in nature, or if Russell or Jean have engaged in the sale of oil and gas interests before, the Court must DENY Plaintiffs' MSJ and Martindale MSJ as to the applicability of Art. 581-5(C)(1) to Russell's and Jean's role in the Martindale Transaction.

2.  **Prairie Oil Company's, Sanabi Oil Company's, and JMR Gas, LLC's Eligibility Under Art. 581-5 § (C)(1)**

Despite the dearth of case law applying the exemption under TSA 5(C)(1), the Court finds the repeated use of the word "personal" dispositive. *See* Tex. Rev. Civ. Stat. Ann. art. 581-5(C)(1) (referring to a sale of securities "in the ordinary course of bona fide personal investment of the personal holdings of such vendor . . . ."). The TSA defines the term "person," but does not define the word "personal." *See* Tex. Rev. Civ. Stat. Ann. art. 581-4(B) (stating, "[t]he terms 'person' and 'company' shall include a corporation, person, joint stock company, partnership, limited partnership, association, company . . . ."). The Court will not conflate the TSA-defined noun "person" with the undefined adjective "personal," which the Legislature uses repeatedly in the exemption.

"It is cardinal law in Texas that a court construes a statute, 'first, by looking to the plain and common meaning of the statute's words.'" *Fitzgerald v. Adv. Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865 (Tex. 1999) (citation omitted); *see also* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 69 (2012) ("Words should be given 'their ordinary, everyday meanings,'" unless the lawmaking body has provided a specific definition, or "the context indicates they bear a technical sense."). Giving every word and phrase meaning is also cardinal to statutory interpretation. In Texas, courts are to "presume that the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen." *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011); *see also* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 174 (2012) ("If possible, every word and every provision is to be given effect . . . . None should be ignored.").

TSA 5(C)(1) emphasizes the personal nature of the holding(s), investment, and transaction. The transaction must be made "in the ordinary course of a bona fide *personal* investment of the *personal* holdings" of the vendor. Tex. Rev. Civ. Stat. Ann. art. 581-5(C)(1) (emphasis added). Because the TSA does not define "personal," the Court refers to the meaning of the word "personal" in Black's Law Dictionary. Black's Law Dictionary defines the adjective "personal" as "of or affecting a person," such as a personal injury, or "of or constituting personal property." Black's Law Dictionary (11th ed. 2019). The Court, therefore, concludes that the adjective "personal" describes something in relation to an individual. The Court will neither ignore the word "personal" nor its human connotation. Because of the human connotation of the word "personal," the Court concludes that a business entity cannot have personal investments or personal holdings. Therefore, the security at issue must be held by a human, and must be sold by a human, for the exemption to apply.

Here, neither party disputes that Prairie Oil Company, Sanabi Oil Company, and JMR Gas, LLC held and conveyed the some of the oil and gas security to TU in the Martindale Transaction. (ECF No. 65, Exs. C, D). Prairie Oil Company, Sanabi Oil Company, and JMR Gas, LLC are not human beings, so they cannot be protected by the exemption. The Court therefore GRANTS summary judgement on this exemption for the Plaintiffs and DENIES summary judgment on this exemption for Defendants Prairie Oil Company, Sanabi Oil Company, and JMR Gas, LLC.

**B. Limited Offering Exemptions Under Art. 581-5 §§ (I)(a), (I)(c)**

Article 581-5(I) ("TSA 5(I)") provides three exemptions for sales of securities by issuers that are for limited offerings. Tex. Rev. Civ. Stat. Ann. art 581-5(I). Initially, Martindale Defendants contended they qualify under two of those exemptions: Article 581-5(I)(a) and Article 581-5(I)(c). In Martindale Response to Plaintiffs' MSJ, Martindale Defendants conceded the

exemptions at TSA 5(I) do not apply because they are not "issuers" of oil and gas securities pursuant to the definition provided in TSA 581-4(G). (ECF No. 102, ¶ 34). Accordingly, the Court GRANTS Plaintiffs' MSJ for this exemption, finding that Martindale Defendants cannot claim exemptions under Articles 581-5(I)(a) and 581-5(I)(c).

### C. The Oil & Gas Exemption Under Art. 581-5 § (Q)

Tex. Rev. Civ. Stat. Ann. art. 581-5(Q) (hereinafter, "Art. 581-5(Q)") exempts from the registration requirements of the TSA transactions of the following nature:

> The sales of interests in and under oil, gas or mining leases, fees or titles, or contracts relating thereto, where (1) the total number of sales by any one owner of interests, whether whole, fractional, segregated or undivided in any single oil, gas or mineral lease, fee or title, or contract relating thereto, shall not exceed thirty-five (35) within a period of twelve (12) consecutive months and (2) no use is made of advertisement or public solicitation; provided, however, if such sale or sales are made by an agent for such owner or owners, such agent shall be licensed pursuant to this Act . . . .

Tex. Rev. Civ. Stat. Ann. art. 581-5(Q) (referred to as "TSA 5(Q)"). Stated differently, TSA 5(Q) "exempts interests in oil and gas leases from registration of two tests are met: (1) the total number of interests sold does not exceed thirty-five within a twelve month period; and (2) no use is made of advertisement or public solicitation." *Paull v. Cap. Res. Mgmt., Inc.*, 987 S.W.2d 214, 217 (Tex. App.–Austin, 1999, pet. denied). The Court will address each of the elements under TSA 5(Q) in turn.

#### 1. Total Number of Interests Sold Within a Twelve-Month Period

Here, neither party disputes that the Martindale Defendants satisfied test 1: the Martindale Defendants did not make more than thirty-five sales of oil and gas interests within a period of twelve consecutive months. The Martindale Defendants assigned TU their interest in eleven separate oil and gas leases, and these eleven assignments were the only sales of oil and gas interests conducted by the Martindale Defendants in 2016 and 2017. (ECF No. 65, Exs. C, D (assignments);

ECF No. 73, Ex. A, 22:24–23:11).

### 2. Public Solicitation

The parties do not allege that the Martindale Defendants used advertisement to sell their oil and gas interests. Therefore, the issue here is whether the Martindale Defendants used public solicitation in the sale of those interests.

The exemption prohibits using *public* solicitation. Courts in Texas required to presume that the legislature uses each word for a purpose and that no word is superfluous. ***Combs***, 340 S.W.3d at 439; *see also* Antonin Scalia & Bryan A. Garner, *supra*, at 174 (2012) ("If possible, every word and every provision is to be given effect . . . . None should be ignored."). Use of the word "public" in TSA 5(Q) suggests private discussions regarding the sale of an oil and gas interest may not defeat the exemption. In ***Nicholas***, a Texas state appellate court supported the trial court's finding that a seller of securities did not engage in public solicitation or advertising for purposes of an analysis under TSA 5(Q) when the purchaser of securities "initially sought out the [securities seller] after learning of the prospective drilling operations to be conducted by the [securities seller] through a fellow officer in the bank where [purchaser] worked." 687 S.W.2d 365, 368 (Tex.App.—Tyler 1984, writ ref'd n.r.e.). The ***Nicholas*** court differentiated between such "personal and private dealings" and "public solicitation." *Id.* In ***Paull***, another Texas state appellate court relied on ***Nicholas*** to affirm the trial court's determination that no public solicitation occurred when a security seller presented information about an investment opportunity to a security investor at the investor's own request. 987 S.W.2d at 217. This Court finds the ***Nicholas*** distinction persuasive.

As a threshold matter, the Court observes that summary judgment evidence does not support concluding this solicitation was public in nature. Like in ***Nicholas***, these transactions began because Scribner initiated private sale discussions with the Martindale Defendants. 687

S.W.2d at 368. This limited private dealing cuts against a finding of public solicitation.

By rule, the Texas State Board of Securities (the "Board") provides that Texas Administrative Code §§ 109.13(a)-(c) and (j) (hereinafter, the Texas Administrative Code shall be referred to as "TAC") applies to offerings under TSA 5(Q). This authority is derived from Tex. Rev. Civ. Stat. Ann. Art. 581-5(T).[8] The rule issued by the Board provides:

> It is the intent of the State Securities Board that § 109.13(a)-(c) and (j) of this title (relating to Limited Offering Exemptions) apply to transactions made pursuant to the Securities Act, § 5.Q, and that the terms defined in § 109.13(a)-(c) and (j) of this title (relating to Limited Offering Exemptions) have the same meanings for purposes of § 5.Q as they do for the Securities Act, § 5.I.

7 Tex. Admin. Code § 109.14(a) (State Securities Board, Transactions Exempt From Registration).

TAC § 109.13, which addresses Limited Offering Exemptions, defines "public solicitation" for purposes of analyzing whether "use is made of public solicitation" in the sale of interests of oil and gas under TSA 5(Q). TAC § 109.13(a) titled "public solicitation, well-informed, and sophisticated investor" provides:

> The offer for sale or sale of the securities of the issuer would not involve the use of public solicitation under the Act, § 5.I, if the issuer, after having made a reasonable factual inquiry has reasonable cause to believe, and does believe, that the purchasers of the securities are sophisticated, well-informed investors or well-informed investors who have a relationship with the issuer . . . , and such purchasers acquire the securities as ultimate purchasers and not as underwriters or conduits to other beneficial owners or subsequent purchasers . . . The offer without advertising to a person who did not come within the class of persons described in this subsection does not alone result in public solicitation if the issuer had a reasonable cause to believe and did believe that such person fell within the class of persons described, and that such offer was not made indiscriminately.

7 Tex. Admin. Code § 109.13(a) (State Securities Board, Transactions Exempt From Registration). In simplified terms, owner's[9] sale of a security would not involve "the use of public

---

[8] Art. 581-5(T) provides that the TSA's registration requirements shall not apply to "[s]uch other transactions or conditions as the board by rule, regulation, or order may define or prescribe, conditionally or unconditionally." Tex. Rev. Civ. Stat. Ann. art. 581-5(T).

[9] The Court observes that TAC § 109.13(a) describes public solicitation in terms of "the securities of the issuer." 7

solicitation" if it is made: (1) after a reasonable factual inquiry to sophisticated, well-informed investors, or (2) to well-informed investors who have a relationship with the owner or its principals that evinces trust and the purchasers do not acquire the securities for resale. *Id*. Moreover, the owner must both have reason to believe and in fact believe that the purchaser meets one of these criteria to satisfy the exemption. *Id*. The TAC provides guidance to assist in assessing whether an investor is "well-informed" and/or "sophisticated." 7 Tex. Admin. Code §§ 109.13(a)(1)–(2).

### i. Well-Informed Investor

In TAC § 109.13(a)(1), the Board provides considerations for determining if an investor is "well-informed," stating:

> The term "well-informed" could be satisfied through the dissemination of printed material to each purchaser prior his or her purchase, which by a fair and actual presentation discloses the plan of business, the history, and the financial statements of the issuer, including material facts necessary in order that the statements made, in light of the circumstances under which they are made, not be misleading.

7 Tex. Admin. Code § 109.13(a)(1). Plaintiffs contend TU cannot be characterized as a "well-informed" investor because Martindale Defendants "must have, at a minimum, ensured that TU had sufficient information in order to make an informed investment decision about the transaction." (ECF No. 73, ¶ 39). Plaintiffs argue the Board provides a way for sellers, such as the Martindale Defendants, to satisfy the requirement. (*Id*.) According to Plaintiffs, Martindale Defendants could not have had a "basis and actual belief that TU was a 'well-informed' investor"

---

Tex. Admin. Code Ann. § 109.13(a). Defendants conceded they are not issuers of oil and gas securities. Despite using the word "issuer," the Court concludes the TSSB did not intend for TSA 5(Q)—which protects owners, not issuers— to be limited by the word "issuer." TAC § 109.14(a) specifically states that "[i]t is the intent of the State Securities Board that § 109.13(a)–(c) and (j) of this title … apply to transactions made pursuant to the Securities Act, § 5.Q, and that the terms defined in § 109.13(a)–(c) and (j) of this title … have the same meanings for purposes of § 5.Q as they do for the Securities Act, § 5.I." 7 Tex. Admin. Code Ann. § 109.14(a). Reading the definitions of public solicitation contained in TAC § 109.13 as only applying to issuers would render those same definitions meaningless for the owners protected by TSA 5(Q). As such, the Court will interpret the definitions of public solicitation in TAC § 109.13(a) as applying to sales of securities by an "issuer" for purposes of TSA 5(I) but as applying to sales of securities by an "owner" for purposes of TSA 5(Q).

because Martindale Defendants failed to disseminate printed materials containing the relevant financial and investment-related information to TU. (*Id.*)

Martindale MSJ argues generally that the oil and gas interests owned by the Martindale Defendants were not marketed to Plaintiffs, nor were they publicly advertised or solicited. Instead, Scribner called Russell's office to discuss an interest in purchasing the Martindale Interests. (ECF No. 65, ¶ 78). The investments were the results of "personal and private dealings" between the parties and initiated by Plaintiffs' agent, Scribner. (*Id.* at ¶¶ 67–69). Martindale Defendants argue Scribner—as TU's agent— was well-informed because he identified himself as a petroleum engineer and touted how knowledgeable he was about the oil and gas industry, particularly in the Texas panhandle region. (*Id.* at ¶ 78).

The Court finds that Martindale Defendants "made a reasonable factual inquiry" and "had reasonable cause to believe," that Scribner was well-informed. 7 Tex. Admin. Code § 109.13(a)(1). The Court recognizes that Martindale Defendants did not disseminate printed material disclosing the plan of business, history, and financial statements of the Martindale Transaction. Plaintiffs' MSJ acknowledges that the Board "provides *a way* . . . to satisfy" the well-informed investor requirement." (ECF No. 73, ¶ 39) (emphasis added). The Court agrees with TU that TAC § 109.13(a)(1), does, indeed, give a decision-making body a method to analyze if an investor is "well-informed"; but this method is in no way the only method of making such a determination.

The Texas legislature instructs this Court that deciding if an investor is "well-informed" "*could* be satisfied through the dissemination of printed materials" informing the purchaser about the security it is buying. 7 Tex. Admin. Code § 109.13(a)(1) (emphasis added). "To determine whether the Legislature intended a provision to be mandatory or directory, we consider the plain meaning of the words used, as well as the entire act, its nature and object, and the consequences

that would follow from each construction." ***Helena Chemical Co. v. Wilkins***, 47 S.W.3d 486, 494 (Tex. 2001). The TAC does not direct that the Court shall or must use dissemination of printed materials as the sole criteria for concluding that an investor was "well-informed." The TAC merely provides how an investor *could* be deemed "well-informed." 7 Tex. Admin. Code § 109.13(a)(1). Therefore, the Court considers the plain meaning of the word "well-informed."

Here, Scribner indicated to Russell he looked at the leases he was purchasing for sale online. (ECF No. 65, Ex. E, 13:15–14:1, 35:6–11). Scribner held himself out as a petroleum engineer. (ECF No. 65, Ex. E, 48:13–14). Scribner told Russell he was familiar with production history, knew about the panhandle area, and had plans on how he was going to work with DALF to revitalize the wells to increase production.(ECF No. 65, Ex. E, 35:6–11). The Court therefore finds the Martindale Defendants "made a reasonable factual inquiry" and "had reasonable cause to believe" that Scribner as TU's agent was well-informed.

What the Court lacks, however, is what the Martindale Defendants actually believed about whether TU was well-informed at the time of the transaction. TAC § 109.13(a) requires that the owner "has reasonable cause to believe, and does believe" the investor is well-informed. Because each word in a statute is presumed to have meaning and purpose, ***Combs***, 340 S.W.3d at 439, the Court concludes reasonable cause to believe and actual belief are separate elements which must be supported by their own evidence. The Court will not draw inferences about what an individual actually believed.

The Court will now consider whether the Martindale Defendants reasonably and actually believed Plaintiffs were sophisticated investors.

### ii. Sophisticated Investor

In determining if an investor is "sophisticated," "at least the following factors should be

19

considered":

> (A) The financial capacity of the investor, to be of such proportion that the total cost of that investor's commitment in the proposed investment would not be material when compared with his total financial capacity. It may be presumed that if the investment does not exceed 20% of the investor's net worth (or joint net worth with the investor's spouse) at the time of sale that the amount invested is not material.
>
> (B) Knowledge of finance, securities, and investments, generally. This criteria may be met by the investor's purchaser representative if such purchaser representative has such knowledge, so long as such purchaser representative:
>
>> (i)   has no business relationship with the issuer;
>> (ii)  represents only the investor and not the issuer; and
>> (iii) is compensated only by the investor.
>
> (C) Experience and skill in investments based on actual participation. This criteria may be met by the investor's purchaser representative if such purchaser representative has such experience and skill, so long as such purchaser representative:
>
>> (i)   has no business relationship with the issuer;
>> (ii)  represents only the investor and not the issuer; and
>> (iii) is compensated only by the investor.

7 Tex. Admin. Code § 109.13(a)(2)(A)-(C). In summary form, determining if an investor is "sophisticated" requires consideration of the investor's financial capacity; the investor's knowledge, or the knowledge of the investor's purchaser representative, regarding finance, securities, and investments; and the investor's experience and skill. *Id.*

Plaintiffs argue Martindale Defendants did not have a "basis and actual belief that TU was a 'sophisticated' investor" because they did not "know[] and consider[] TU's financial capacity; how this particular transaction stood in relationship to TU's net worth; TU's knowledge of finance, securities, and investments; and TU's experience and skill in investments based on actual participation." (ECF No. 73, ¶ 40).

Martindale MSJ argues that Defendants believed Scribner was a sophisticated investor. In

particular, Scribner told Martindale Defendants that he represented Titan and DALF, and that he was hired to purchase the leases and run the company. (ECF No. 65, ¶ 74). Scribner repeatedly identified himself as a professional engineer, and that TU and DALF were engaged in the oil and gas business. (*Id*.) Scribner authorized the wiring of $3,000 for payment of the Martindale Transaction before the closing. (*Id*.). The culmination of these facts led Defendants to believe Plaintiffs were sophisticated.

The Court finds the Martindale Defendants "made a reasonable factual inquiry" and "had reasonable cause to believe" that Scribner as TU's agent was sophisticated. Again, guidance on determining if an investor is sophisticated as described in TAC § 109.13(a)(2) are suggestions of "at least" what the Court "should" consider. Ultimately, there is enough evidence for the Court to conclude that Scribner repeatedly held himself out as a petroleum engineer with the knowledge, experience, and ability to purchase leases on behalf of Plaintiffs. Moreover, Scribner told Russell when he introduced himself that he "represent[s] a group of people that are buying" the wells and that he would "be operating [the wells] for them." (ECF No. 65, Ex. E, 19:14–16). The Martindale Defendants had reasonable cause to believe that Plaintiffs were sophisticated investors.

As with the well-informed investor element, the Court lacks evidence about what the Peterson Defendants actually believed regarding Plaintiffs' investment sophistication. Actual belief remains a fact issue for trial.

### iii.    Additional Considerations Under TAC § 109.13

Plaintiffs contend Martindale Defendants cannot claim the exemption under TAC § 109.13 because—in addition to failing to make a reasonable factual inquiry, having a reasonable cause to believe, and then actually believing that TU is a "well-informed" and "sophisticated" investor— they also did not satisfy the Board's further "limitations on disposition" requirement under TAC

§ 109.13(j).[10]

Section 109.13(j) requires the owner[11] "of a security and any person acting on its behalf" to "exercise reasonable care to assure that the purchasers are acquiring the security as an investment." 7 Tex. Admin. Code § 109.13(j). "Such reasonable care *should* include, but not be limited to," five actions. *Id*. (emphasis added). "Should" is permissive. The Court interprets the five actions listed in TAC § 109.13(j)(1)–(5) as considerations that could constitute reasonable care. In other words, defendants seeking to claim TSA 5(Q) are not required to take the steps set out in TAC § 109.13(j)(1)–(5), though the Legislature and TSSB suggests owners do to protect purchasers. All TAC § 109.13(j) requires is that owners "exercise reasonable care to assure that the purchasers are acquiring the securities as an investment." 7 Tex. Admin. Code § 109.13(j).

According to Plaintiffs, Martindale Defendants were required to, but did not, make a reasonable inquiry to determine if TU was acquiring the security for itself or another in contravention of TAC § 109.13(j)(1). (ECF No. 73, ¶ 42). Plaintiffs also contend Martindale Defendants failed to include language in the Assignment noting that the security was not registered and setting forth restrictions on transferring the security to another, as required by TAC § 109.13(j)(2). (*Id*.). Plaintiffs further allege Martindale Defendants did not obtain a signed written agreement from TU committing not to sell the security without registering it or having an exemption from registration pursuant to TAC § 109.13(j)(4). Finally, Plaintiffs argue Martindale Defendants failed to provide TU a written disclosure stating that TU must bear the economic risk of the investment for an indefinite period of time given the transfer restrictions, as required by

---

[10] Under § 109.14(a) of the TAC, "[i]t It is the intent of the State Securities Board that § 109.13(a)-(c) and (j) of this title . . . apply to transactions made pursuant to the Securities Act, § 5.Q . . . ." 7 Tex. Admin. Code § 109.14(a).

[11] Like TAC § 109.13(a), subsection (j) addresses "issuer[s]." The Court concluded *supra* at note 9 that the clear legislative and administrative intent expressed in TAC § 109.14(a) supports reading the regulations included in TAC 109.13(a) as applying to both issuers of and owners of securities. TAC § 109.14(a) includes not only TAC § 109.13(a), but also subsections (b)-(c) and (j). 7 Tex. Admin. Code Ann. § 109.14(a). In order to be consistent, the Court will interpret the provisions of TAC § 109.13(i) as applying to issuers and owners.

TAC § 109.13(j)(5). Plaintiffs conclude Martindale Defendants admit they did not take any of the steps required by TAC § 109.13(j), which proves—as a matter of law—that Martindale Defendants cannot claim the exemption under TSA 5(Q).

The Court concludes the Martindale Defendants satisfied their duty of to exercise reasonable care. Scribner told Russell he had reviewed information about the oil and gas leases being offered for sale through a public online database. (ECF No. 65, Ex. E, 13:15–14:1, 35:6–11). Russell contends Scribner stated he "looked at the production, the history, and knew all about [the] area," and that DALF "was going to revitalize and redo several of the [Martindale's] wells to bring it back to the former glory." (ECF No. 65, Ex. E, 35:6–11). Scribner told Russell when he introduced himself that he "represent[s] a group of people that are buying" the wells and that he would "be operating [the wells] for them." (ECF No. 65, Ex. E, 19:14–16). Because Scribner, as Plaintiffs' agent, repeatedly informed Russell that Plaintiffs intended to buy the Martindale oil and gas interests as an investment, the Court concludes Martindale Defendants reasonably exercised care to assure Plaintiffs were purchasing the securities as an investment.

### 3. Conclusion for the Oil & Gas Exemption Under Art. 581-5 § (Q)

The Court finds that the Martindale Defendants satisfy all of TSA 5(Q)'s elements. The parties do not dispute Martindale Defendants sold less than thirty-five oil and gas interests in the year prior to the Peterson Transaction. Martindale Defendants demonstrated they reasonably and actually believed TU was a "well-informed" and "sophisticated" investor to establish non-use of public solicitation. Moreover, Peterson Defendants satisfy TAC § 109.13(j)'s limitations on disposition. Therefore, the Court concludes Martindale Defendants are eligible for TSA 5(Q)'s exemption. The Court GRANTS Martindale MSJ and DENIES Plaintiffs' MSJ on TSA 5(Q) grounds.

23

**D. Applicability of Oil and Gas Industry Exemption Under Section 109.14(d) of the Texas Administrative Code**

Through the authority provided under TSA 581-5(T), TAC § 109.14(d)(1) provides an exemption not contained within the TSA itself:

> In addition to offers and sales made pursuant to the Act, §5.Q, the State Securities Board, pursuant to the Act, §5.T, exempts from the securities registration requirements of the Act, §7, and the dealer and agent registration requirements of the Act, §12 and §18, the offer and sale of any interest in or under an oil, gas, or mining lease, fee, or title, or payments out of production in or under such leases, fees, or titles or contracts relating thereto by the owner or an agent for the owner when such offer or sale is made to persons and/or companies each of whom the owner or owner's agent shall have reasonable cause to believe and does believe meets the following criteria.
>
> (A) is engaged in the business of exploring for or producing oil, gas, or other minerals as an ongoing business or is engaged in the practice of a profession, or discipline, which is directly related to the exploration for, production of, refining of, or marketing of oil, gas, or other minerals such as the interest being sold; or
>
> (B) is a landman, drilling company, well service company, production company, refining company, geologist, geophysicist, petroleum engineer, earth scientist; or
>
> (C) is an executive officer of a company whose primary plan of business involves either subparagraphs (A) or (B) of this paragraph.

7 Tex. Admin. Code Ann. § 109.14(d)(1)(A)–(C).

In other words, if an owner of an oil, gas, or minerals security (or the owner's agent) offers for sale or sells the oil, gas, or mineral security to a person or company whom the owner (or the owner's agent) has reason to believe and actually believes fits certain criteria, then the transaction is exempt from the registration requirements of the TSA. *Id.* Those criteria are: (A) engagement in the business of exploring of or producing oil, gas, or other minerals in an ongoing manner, or engagement in the practice of a profession or discipline directly related to exploring for, producing of, refining of, or marketing of oil, gas, or other minerals; (B) status as a landman, drilling company, well service company, production company, refining company, geologists, geophysicist, petroleum engineer, or earth scientists; or (C) status as an executive officer for a company whose

24

primary plan of business involves criteria (A) or (B). *Id.* Even if a person does not meet these criteria, the owner (or owner's agent) may not lose if the offer was "not made indiscriminately." *Id.* at (d)(2). Like other TSA exemptions, no binding case interprets relevant provisions of TAC § 109.14(d).

The TSA does not define "owner." Black's Law Dictionary defines "owner" as "[s]omeone who has the right to possess, use, and convey something." Black's Law Dictionary (11th ed. 2019). Because courts in Texas interpret a statute, "first, by looking to the plain and common meaning of the statute's words," *Fitzgerald*, 996 S.W.2d at 865, the Court will adopt the Black's definition of owner.

Unlike owner, an owner's agent is defined to include:

> (A) officers, directors, and employees who are actively engaged in the day-to-day activities of the owner;
> (B) independent landmen, engineers, geologists, and consultants who have a contractual working relationship with the owner;
> (C) persons who meet the dealer registration requirements of the Securities Act, §12; and
> (D) persons who represent the owner in transactions exclusively with persons described in paragraph (1)(A)-(C) of this subsection.

7 Tex. Admin. Code § 109.14(d)(3) (West 2021).

The parties do not dispute that Martindale Defendants owned the oil and gas interests sold to TU. (ECF No. 65, Ex. C). Russell signed the assignments in his representative capacity for the entities involved. (*See, e.g.,* ECF No. 65, Ex. C, at 4 (signing as President and Managing Partner of entities)). Scribner told Russell that DALF "was going to revitalize and redo several of the [Martindale's] wells to bring it back to the former glory." (ECF No. 65, Ex. E, 35:6–11). Scribner represented to Russell that he represented both DALF and TU. (*See* ECF No. 65, Ex. E, 47:3–20). Scribner also told Russell he would operate the wells for DALF and TU upon purchase. (*See* ECF

No. 65, Ex. E, 19:14–16). The Court finds that Russell, as representative of the Martindale Defendants, reasonably believed TU was in the business of producing oil and gas.

The Court further finds that Russell, as representative of the Martindale Defendants, actually believed TU was an industry participant. Russell and Scribner agreed to close the sale in Pampa, Texas. Scribner wanted to close there because "he did not want to make multiple trips." (ECF No. 65, Ex. E, 50:10–24). When asked during a deposition if he knew Scribner was closing with other named defendants, Russell replied "I guess so." (ECF No. 65, Ex. E, 51:9–12). Though "I guess so" is not a strong indication of Russell's actually belief, other summary judgment evidence supports the conclusion that Russell knew TU was in the oil and gas industry. When the parties were negotiating, Scribner sent Russell an example of an assignment to use as a guide. (ECF No. 65, Ex. E, 24:8–13). The Court finds that purchasing oil and gas leases is directly related to exploring for, producing of, refining of, or marketing of oil, gas, or other minerals. Therefore, the Court concludes Martindale Defendants reasonably and actually believed TU was an oil and gas industry participant for purposes of TAC § 109.14(d)(1).

### A. TU is Not Entitled to a Declaration that Prairie Oil Company, Sanabi Oil Company, or JMR Gas, LLC Violated the TSA

The Court finds that, as a matter of law, Prairie Oil Company, Sanabi Oil Company, and JMR Gas, LLC do not qualify for exemptions under TSA 5(C)(1) and 5(I). Genuine issues of material fact exist as to whether Prairie Oil Company, Sanabi Oil Company, and JMR Gas, LLC qualify for an exemption under TSA 5(Q). The Court further finds, as a matter of law, that Prairie Oil Company, Sanabi Oil Company, and JMR Gas, LLC are entitled to the exemption created by TAC 109.14(d).

**B. TU is Not Entitled to a Declaration that Russell Martindale and Jean Martindale Violated the TSA**

TU has requested a declaratory judgment that Russell and Jean violated the TSA by selling an unregistered security not subject to any exemption. Russell and Jean were sued in their individual and representative capacities.[12] (ECF No. 65, Ex. A, at 1). All Martindale Defendants importantly filed a joint answer to the complaint. (Case No. 20-05049, ECF No. 22). Because Martindale Defendants jointly answered, the Court cannot reach the merits on whether Russell and Jean in their personal capacity violated the TSA. Moreover, the parties have lumped the Martindale Defendants together in their arguments about liability. The issues of Russell's and Jean's liability both as representatives and as individuals are reserved for trial.

**C. Misrepresentations, Omissions, and Fraud**

The parties agreed at a status conference that resolution of the Plaintiff's TSA claims were a threshold issue. (*See also* ECF No. 105, ¶ 23). Still the Martindale Defendants sought summary judgment on the elements of common law fraud. (ECF No. 67, ¶¶ 92–95). "Plaintiffs do not contest partial summary judgment on the common law fraud claim asserted against the Martindale Defendants." (ECF No. 107, ¶ 23). The Court will not address any further arguments regarding misrepresentations, omissions, and fraud—whether statutory or common law. Those issues are reserved for trial.

**D. Plugging Liability**

Like issues of misrepresentation, omissions, and fraud, issues of plugging liability are reserved for trial. The parties agreed that the Plaintiff's TSA claims were threshold issues, so the Court will not reach the plugging liability issue.

---

[12] *Supra* note 2, at 3.

### E.  Remedies

Those who sell unregistered securities in violation of the TSA are liable to the buyer either "for recission or for damages if the buyer no longer owns the security." Tex. Civ. Stat. Ann. art. 581-33(A)(1). "Recission of a contract is an equitable remedy used as a substitute for monetary damages when such damages would not be adequate." ***Isaacs v. Bishop***, 249 S.W.3d 100, 109–110 (Tex. Ct. App. — Texarkana 2008, pet. denied) (citations omitted). Under the TSA, in other words, a party must choose between recission or damages.

Here, Plaintiffs seek to rescind the Peterson Transaction and "a specific dollar amount that would restore TU to its original position" based on a trial, if necessary. (ECF No. 74, ¶ 54). The Court will not grant Plaintiffs' request for recission, however, because there is no evidence indicating whether Plaintiffs currently own the securities. Until ownership is determined, recission is premature. Moreover, Plaintiffs have not established as a matter of law that Peterson Defendants cannot claim any TSA exemption, so no remedy is appropriate at this juncture.

Any other relief that is not expressly granted or denied herein is reserved for trial.


### CONCLUSION

For the foregoing reasons, it is ORDERED Martindale Defendants Motion for Summary Judgment (ECF No. 64) DENIED as a to a finding that Russell Martindale and Jean Martindale are eligible for the exemption under Tex. Rev. Civ. Stat. Ann. art. 581-5(C)(1) because a genuine issue of material fact exists;

IT IS FURTHER ORDERED that Martindale Defendants Motion for Summary Judgment (ECF No. 64) DENIED as a to a finding that Prairie Oil Company, Sanabi Oil Company, and JMR Gas, LLC are eligible for the exemption under Tex. Rev. Civ. Stat. Ann. art. 581-5(C)(1);

IT IS FURHTER ORDERED that Martindale Defendants' Motion for Summary Judgment (ECF No. 64) is GRANTED as to a finding that Martindale Defendants are eligible for the exemption under Tex. Rev. Civ. Stat. Ann. art. 581-5(Q);

It is FURTHER ORDERED that the Martindale Defendants' Motion for Summary Judgment (ECF No. 64) is GRANTED as to a finding that Martindale Defendants are eligible for the exemption under 7 Tex. Admin. Code Ann. § 109.14(d)(1);

It is FURTHER ORDERED that the Martindale Defendants' Motion for Summary Judgment (ECF No. 64) is DENIED on all other grounds;

It is FURTHER ORDERED that Plaintiffs' Motion for Summary Judgment Against Russell Martindale, Jean Martindale, Prairie Oil Company, Sanabi Oil Company, and JMR Gas, LLC (ECF No. 73) is DENIED as to a finding that Russell Martindale and Jean Martindale are ineligible for the exemption under Tex. Rev. Civ. Stat. Ann. art. 581-5(C)(1);

It is FURTHER ORDERED that Plaintiffs' Motion for Summary Judgment Against Russell Martindale, Jean Martindale, Prairie Oil Company, Sanabi Oil Company, and JMR Gas, LLC (ECF No. 73) is GRANTED as to a finding that Prairie Oil Company, Sanabi Oil Company, and JMR Gas, LLC are ineligible for the exemption under Tex. Rev. Civ. Stat. Ann. art. 581-5(C)(1);

It is FURTHER ORDERED that Plaintiffs' Motion for Summary Judgment Against Russell Martindale, Jean Martindale, Prairie Oil Company, Sanabi Oil Company, and JMR Gas, LLC (ECF No. 73) is GRANTED IN PART as to a finding that Martindale Defendants are ineligible for the exemption under Tex. Rev. Civ. Stat. Ann. art. 581-5(I);

It is FURTHER ORDERED that Plaintiffs' Motion for Summary Judgment Against Russell Martindale, Jean Martindale, Prairie Oil Company, Sanabi Oil Company, and JMR Gas,

LLC (ECF No. 73) is DENIED on all other grounds.

The Court will issue a separate order.

# # #